

FILED
CLERK, U.S. DISTRICT COURT

JUL 1 5 2010
1:50

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Glen Broemer
9236 Bloomington Avenue
Bloomington MN  55425
(952) 881 0639  glenbroemer@gmail.com

**United States District Court Central District of California**

Glen Broemer.,

Plaintiff,

vs.

George Bush, Dick Cheney, Federal Bureau of Investigation, Dept. of Justice, Central Intelligence Agency, National Security Agency, Dept. of Homeland Security, Defense Intelligence Agency, Secret Service, United States Army, IRS, Unnamed Agents and Employees of these Departments, Agencies, Bureaus, and Branches, City and County of Los Angeles, Republican National Committee, United States Postal Service, Unnamed Members of the Federal Judiciary, Unnamed Members of the House of Representatives, and Does 1-10, inclusive,

Defendants

Case No. **CV10-05193** MMM (RZ)

**Complaint for Damages;**

**Request for Punitive Damages against all Defendants sued in their Personal Capacities;**

1. **Breach of Fiduciary Duty**
2. **Intentional Infliction of Emotional Distress**
3. **Assault**
4. **Battery**
5. **Nuisance**
6. **18 USC § 1961 et seq. (RICO)**
7. **FOIA**
8. **Administrative Procedures Act**
9. **Privacy Act**
10. **Gross Negligence**
11. **Invasion of Privacy**
12. **Defamation**
13. **Trespass**
14. **Conversion**
15. **Lanham Act**
16. **First Amendment**
17. **Fourth Amendment**
18. **Fifth Amendment**
19. **Sixth Amendment**
20. **Eighth Amendment**
21. **Thirteenth Amendment**
22. **California Constitution, Article 1**
23. **Minnesota Constitution, Article 1**
24. **Arizona Constitution, Article 2**
25. **Unfair Competition**

**Request for Injunctive Relief**

-1-

```
                CLERK'S OFFICE U.S.D.C.
                     LOS ANGELES
        7/15/2010 4:16:04 PM  Receipt #: 142437
                Cashier : KPAGE [LA 1-1]
        Paid by: GLEN BROEMER
        2:CV10-05193
        2010-086900        5 - Civil Filing Fee(1)
        Amount :                          $60.00

        2:CV10-05193
        2010-510000        11 - Special Fund F/F(1)
        Amount :                         $190.00

        2:CV10-05193
        2010-086400        Filing Fee - Special(1)
        Amount :                         $100.00
        ------------------------------------------
        Check Payment : 4661 /          350.00
        ------------------------------------------
        Total Payment :                 350.00

        (= NO REFUNDS WITHOUT WHITE RECEIPT =)
```

## INTRODUCTION

In the Russian film Repentance a Russian peasant refuses to allow the brutally fascist official who harmed him and his family to be given an honorable burial, repeatedly digging the body up and displaying it disrespectfully.

## JURISDICTION AND VENUE

1)      This is an action under the the Freedom of Information Act, the Administrative Procedures Act, 42 USC 1983, the Privacy Act, (5 U.S.C. §§ 552a et seq), sections 4, 5, 6, 8 and 11 of Article 2 of the Arizona Constitution, sections 2, 3,7, 8 and 16 of Article 1 of the Minnesota Constitution, and sections 1-4, 6, and 7 of Article I of the California Constitution, and the tort laws of Arizona, California, and Minnesota.  This Court has subject matter jurisdiction over all federal claims pursuant to 15 U.S.C. §§ 1051, 18 U.S.C. §§ 1961, 28 USC §§ 1331 and 1338(a) and ancillary jurisdiction pursuant to 28 USC Section 1367 for Plaintiff's claims arising under state common law and under the aforementioned state constitutions.  This Court has personal jurisdiction over Defendants under the appropriate provisions of California and Minnesota law because other Defendants have conspired with California Defendants to harm Plaintiff.

2)      Venue is also proper in this district pursuant to 28 USC §§ 1391(a)  because a substantial part of the events or omissions giving rise to the claim occurred here and many or most of the Defendants reside here, many or most have committed tortious acts here and all are involved in a conspiracy that appears have Los Angeles as one of its focal points; venue is proper as regards Plaintiff's FOIA claims according to Ex parte Collett, 337 U.S. 55; Wilborn v. Department of Health and Human Services, 49 F.3d 597,  (9th Cir. 1995).

3)      Plaintiff Glen Broemer brings this suit against the above-identified Defendants. Broemer is a citizen of the United States currently residing in Minnesota,  and has been, at other relevant times, a resident of Arizona and California.

## THE PARTIES

4)      Glen Broemer currently resides in Minnesota.

5)      Plaintiff is unaware of the identities of various federal Defendants or the states in which they reside, though he believes that, apart from members of the House of Representatives, many or most are residents of the State of California, some reside in Minnesota, and some reside in Arizona.

6)      On information and belief Defendant Bush is a resident of Texas.

7)     On information and belief Defendant Cheney is a resident of Wyoming.

**Personal And Official Capacity**

8)     All Defendants sued on FTCA, Bivens, Lanham Act and RICO claims acted individually and are being sued in a personal capacity; alternatively, Defendants actions involved an official policy or custom, legal or illegal, and are also being sued in their official capacities as agents, contractors, or employees of the U.S. government and/or the City and County of Los Angeles.

**FOIA, PA and APA Claims**

9)     Over the past 30+ years Defendants conspired to interfere with Plaintiff's life and harmed Plaintiff in the ways stated in this complaint; Plaintiff is not certain which agency, department, bureau or branch houses or has housed Plaintiff's records for many of those years, but notes that agencies have carefully circumscribed their responses, failing to tell Plaintiff what they know and conducting their searches very narrowly.

10)     On or about June 7 2010 Plaintiff served compliant FOIA requests with the Army, United States Postal Service, Internal Revenue Service, DOJ-Office of Information Policy, DOJ-Interpol (USNCB), DOJ-Inspector General, DOJ-Office of Professional Responsibility/Special Counsel for Freedom of Information and Privacy Acts, DOJ-Civil Division.

11)     On or about June 7 2010 Plaintiff also served a compliant FOIA request to the DOJ-FOIA Mail Referral Unit, a unit designed to forward FOIA requests to the DOJ entities most likely to possess responsive records, seeking "access to and copies of all records about me in your possession". Plaintiff advised the Referral Unit that the following DOJ offices may contain records:   Federal Law Enforcement Training Center Marty Zimmerman-Pate 1131 Chapel Crossing Road, Building 681 Glynco, GA 31524; Carmen L. Mallon (any and all offices conected to Carmen) Chief of Staff Office of Information Policy Department of Justice Suite 11050 1425 New York Avenue, N.W. Washington, D.C. 20530-0001; Freedom of Information/Privacy Act Office Civil Division Department of Justice Room 7304, 20 Massachusetts Avenue, N.W. Washington, D.C. 20530-0001; Chief, FOIA/PA Branch Civil Rights Division Department of Justice Room 311, NALC Building Washington, D.C. 20530-0001; Chief, FOIA/PA Unit Criminal Division Department of Justice Suite 1127, Keeney Building Washington, D.C. 20530-0001; Freedom of Information Operations Unit (SARO) Drug Enforcement Administration Department of

Justice 700 Army Navy Drive Arlington, VA 22202; FOIA/Privacy Staff Executive Office for United States Attorneys Department of Justice Room 7300, 600 E Street, N.W. Washington, D.C. 20530-0001; Chief, FOIA/PA Section Office of General Counsel Federal Bureau of Prisons Department of Justice Room 841, HOLC Building Washington, D.C. 20534; FOIA/PA Specialist INTERPOL-United States National Central Bureau Department of Justice Washington, D.C. 20530-0001; FOIA Contact Justice Management Division Department of Justice Room 1111, 950 Pennsylvania Avenue, N.W. Washington, D.C. 20530-0001; FOIA Coordinator National Security Division Department of Justice Room 6150, 950 Pennsylvania Avenue, N.W. Washington, D.C. 20530-0001; FOIA Officer, Legal Division Office of Community Oriented Policing Services Department of Justice 1100 Vermont Avenue, N.W. Washington, D.C. 20530-0001; FOIA/PA Specialist Office of the Inspector General Department of Justice Suite 4726, 950 Pennsylvania Avenue, N.W. Washington, D.C. 20530-0001; FOIA Coordinator Office of Justice Programs Department of Justice Room 5400, 810 7th Street, N.W. Washington, D.C. 20531-0001; Senior Division Counsel for FOIA and Privacy Act Matters Tax Division Department of Justice P.O. Box 227 Ben Franklin Station Washington, D.C. 20044.

12)    In June 2008 Plaintiff also sent an FOIA request to DOJ-Office of Information and Privacy at the address currently listed as the Office of Information Policy.  As Plaintiff noted in his First Amended Complaint in 08-5515,  Plaintiff received a response from Nancy Wiegand, Associate General Counsel of the US DOJ, denied Plaintiff's administrative claim "on behalf of the FBI" on February 26 [2009]; Plaintiff doesn't have a record of receiving a response from any other DOJ entity.

13)    On June 14 Plaintiff received a letter from the United States Postal Service acknowledging receipt of his letter and assigning an FOIA tracking number, though the Postal Service did not provide information.

14)    On June 16 Plaintiff received an e-mail from an individual identified only as "MARY.ROUNDY@us.army.mil" with an 'smime.p7m' attachment that Plaintiff has not been able to open.  Plaintiff sent Ms. Roundy requests for a readable response on on June 17, 18, and 21, and July 12, 2010;  Ms. Roundy has not yet responded.

15)    On or about June 22 2010 the DOJ IG sent Plaintiff a response indicating no responsive documents were located.

16)     On or about June 24 2010 the DOJ-Interpol advised Plaintiff that no records were found.

17)     On or about June 27 2010 Plaintiff appealed the IG response.

18)     On or about June 28 2010 Plaintiff appealed the Interpol response.

19)     On or about July 1 2010 Plaintiff received a response from the DOJ referral unit advising that it had received Plaintiff's request and forwarded the request to several DOJ entities.

20)     On July 2 2010 Plaintiff received a response from the DOJ tax division stating 'we cannot begin to process your applicaion until we receive further clarification from you', citing 'confusion that *may* arise because of similar names', (emphasis added).

21)     As Plaintiff is the only person in the United States with the name Glen Robert Broemer—Plaintiff has checked this in various ways over the course of many years--and there's only one person named Glen Broemer at Plaintiff's address.

22)     On July 2 2010 Plaintiff faxed DOJ Tax/Carmen Banerjee the following response: "Re your June 29 request for clarification, I sent you an FOIA request on June 7.  You indicated you don't have enough information to process the claim--that's false.  My name is Glen Broemer.  My social security number is [redacted ss and prior addresses]..  My place of birth is Minneapolis Minnesota.  As I've already provided you with a written request a second signature should be unnecessary.  Pursuant to both the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and the Privacy Act, 5 U.S.C. § 552a, I seek access to and copies of all records about me in your possession.  Your cite to 28 CFR 16.41(d) is mystifying as I already provided you with a compliant declaration.  The clock started when I sent my initial request, and I've already drafted most of a complaint naming non-compliant agencies, so please give the matter your immediate attention."

23)     On July 6 2010 Plaintiff received a response from Katherine L. Myrick, Chief of the FOIA/PA unit; Myrick stated that Plaintiff's request was deficient and could not be processed because it did not contain an original signature 'to ensure that we possess the necessary search criteria to conduct a search'; on July 6 Plaintiff stating "I'm exercising my right to treat your prior failure to respond as untimely and am filing a lawsuit against the DEA (and several other government agencies).  You may regard this as an FOIA appeal, as a forthcoming response will cause me to withdraw my claim against your agency,  though I will not waive my argument that the response was not timely.  The DOJ referral unit

possesses my original signature, properly requests access to and copies of all records about me in your possession, and you appear to be stalling. I'd like you to check all of your databases, not just databases compiled for law enforcement purposes."

24)     On July 6 2010 Plaintiff received a response from Rena Kim, Chief of the FOIA/PA unit for the DOJ Criminal Division; Kim stated that Plaintiff's request was deficient as Plaintiff did not provide a notarized signature or current list of sections of the criminal division Plaintiff wanted searched; on July 6 2010 Plaintiff responded in writing, advising "The DOJ referral unit possesses my original signature, properly requests access to and copies of all records about me in your possession, and you appear to be stalling. I'd like you to check all of your databases, using your best judgment and all available information in conducting searches likely to produce responsive documents"; Plaintiff experienced kidney pain on July 8 and July 9 2010.

25)     On July 6 2010 Plaintiff received a response from Nelson Hermilla, Chief of the FOIA/PA unit for the DOJ Civil Rights Division indicating no records were found; a response Plaintiff immediately appealed;

26)     On July 10 2010 Plaintiff received a non-compliant response from Sharon Baker of the IRS, in which Baker asserted, incorrectly, that the IRS was not in possession of Plaintiff's signature or social security number; on July 10 2010 Plaintiff responded as follows: ". I've already exercised my right to treat your prior failure to respond as untimely ...You may regard this as an FOIA appeal, as a forthcoming response will cause me to withdraw my claim against your agency, though I will not waive my argument that the response was not timely. You appear to be stalling. I'd like you to check all of your databases, using your best judgment and all available information in conducting searches likely to produce responsive documents"

27)     On July 12, 2010 Plaintiff received a response from Arnetta James, FOIA Coordinator for the DOJ National Security Divisio adising that the letter Plaintiff sent to the DOJ Referral Unit on June 7 was received on June 27; Ms. James letter was also dated June 27 2010 though given the time of Plaintiff's receipt of the letter Plaintiff does not believe the letter was mailed out on that date; Ms. James leter contained no return address; on July 13 2010 Plaintiff sent a letter to James advising her that Plaintiff had already exercised Plaintiff's" right to treat your prior failure to respond as untimely and will soon be filing an

FOIA claim" against the DOJ/NSD, noting "a forthcoming response will cause me to withdraw my claim against your agency."

28)    On July 12 2010 Plaintiff received a response from Marlene Wahowiak from the DOJ Office of Professional Resonsibility advising that a search failed to find any records responsive to Plaintiff's request; on July 13 2010 Plaintiff advised Wahowiak that Plaintiff exercised Plaintiff's 'right to treat your prior failure to respond as untimely' and was filing a claim, again noting "a forthcoming response will cause me to withdraw my claim against your agency."

29)    On July 12 2010 Plaintiff received a response from James Kovakas from the DOJ Civil Division advising that a search failed to find any records responsive to Plaintiff's request; on July 13 2010 Plaintiff advised Kovakas that Plaintiff exercised Plaintiff's 'right to treat your prior failure to respond as untimely' and was filing a claim, again noting "a forthcoming response will cause me to withdraw my claim against your agency."

30)    Plaintiff has not received responses from any of the other entities, and Plaintiff's experience with the federal government thus far suggests genuinely informative responses will not be forthcoming.

31)    Plaintiff has litigated a complicated tax claim with the IRS, noting interferences with his ability to earn and requesting the application of equitable estoppel; Plaintiff has also named the FBI and Army in lawsuits within the past 10 years, has recently received communications from the FBI and Army his FTCA claims, and does not believe these agencies do not have any records pertaining to him, noting that by all evidence these agencies have conspired to conceal, information from him pertaining to their past illegal behavior.

32)    Defendants compounded this error by providing bogus psychological profiles of Plaintiff and should have been estopped from offering further such evidence once their pattern of concealment became evident;

33)    As Plaintiff did not know which branches or agencies have regarded him as an employee for many of the years 1978-2008, in 2008 Plaintiff mdde inquiries of federal legislators asking if he had ever been classified or characterized as an aide, and an aide of one congressman stated that he would provide a response to Plaintiff within a day or two of the inquiry; Plaintiff has not yet had an official response, though he has heard that his employment is, or was at some point, unclassified.

34)   Plaintiff chronicled the difficulties he had obtaining basic information from the FBI in the operative complaint in Central District Case 08-5515. In August 2008 the FBI/CJIS mailed Plaintiff a copy of a rap sheet, which reflected two arrests made while Plaintiff was unwittingly being used by or in the employ of Defendants; the CJIS response did not contain any information about federal employment. In June 2010 in an FOIA motion for summary judgment the FBI published unredacted copies of written complaints Plaintiff sent to the FBI; these complaints identified witnesses and the publication was either grossly negligent or intended to retaliate against Plaintiff for his criticisms and petitioning regarding the Bureau.   The Bureau failed to produce other complaints and criticisms in its possession.

35)   Plaintiff is convinced that there is not a genuine issue as to Defendants' familiarity with Plaintiff or Defendants' awareness of documents pertaining to Plaintiff; as such, the usual rationale for delaying litigation--i.e. to give Defendants a chance to verify they've produced all responsive records—is absent.

36)   Names and other data contained in Defendants' responses demonstrate Defendants' familiarity with Plaintiff, and Defendants' determination to avoid FOIA compliance; Defendants apparently stopped providing Plaintiff with fax numbers after Plaintiff quickly faxed an objection to Carmen Banerjee of the DOJ Tax divison, and subsequent DOJ entities sought more information from Plaintiff than is required by the FOIA;

37)   All federal Defendants have refused to provide information in a timely manner, and the conduct of all  federal Defendants' is in violation of standard governmental procedure and is intended to hamper, and in fact has hampered, Plaintiff's exercise of his first amendment rights.

### Tort Claims

38)   In November 2007 Plaintiff submitted an FTCA claim to the Dept. of Justice, DIA, CIA, NSA, DHS, President Bush, and Vice-President Cheney 'and [unnamed] others in the federal government' seeking 200 million dollars in damages for the torts of false light, public disclosure of private facts, intrusion upon seclusion, breach of fiduciary duty, battery, gross negligence, nuisance, invasion of privacy, defamation, assault, battery, conversion, and intentional infliction of emotional distress. As there are legal and factual issues pertaining to the accrual date, Plaintiff submitted another FTCA claim in December 2009 eking, cumulatively, 280 million dollars in damages; repeating eats all earlier allegations earliontains several new claims made upon the discovery of new facts and the occurrence of

new rulings; including claims that Defendants used hypnosis, subliminal messages, energy weaponry and similar techniques designed to interfere with my subconscious processes, attacked Plaintiffs crotch, kidneys, head attacks, stomach, arms, and heart, induced or caused me to take drugs, caused the deaths or loss of several of my pet cats and publicly joked about it, caused the deaths of two of my pet rabbits and publicly joked about it, caused or negligently permitted the constant harassment and physical abuse of my cats from interfered with and manipulated Plaintiff's mood, world view, motivation, optimism, appetite, interest in various subjects, speech and ability to recall words, including tampering with my willingness to speak, creative imagination, level of aggression, day to day decision-making, and my ability to process language, sabotaged my opportunities by creating conflict between myself and various employers, severely and irreparably damaged both my reputation, destroyed my privacy, illegally evicted me, and denied the validity of the earlier claims primarily so they could continue to wrongfully use me and avoid punishment;

39)     Various statements in the circuits include that the statute begins to run when a Plaintiff can actually litigate the claim or when the fraud of federal agents has been discovered—which of course can take years--while others assert there's an ongoing legal debate as to when the subject has sufficient knowledge to trigger accrual, and whether and to what extent FTCA claims are subject to equitable tolling and estoppel; Plaintiff has continously accumulated evidence of Defendants' wrongdoing, discovering, e.g., a set of plans controlling Plaintiff's behavior and decisionmaking on matters as trivial as the names of Plaintiff's pets, and as significant as Plaintiff's general state of mind and life decisions; a set of references to Plaintiff as a guinea pig, used in government experiments, a vast amount of evidence relating to tax frames, a blatant statement of intention to injure Plaintiff, place Plaintiff on a stretcher,  as a cost of some sort, a statement Plaintiff has correlated with other references to stretchers in and around the time Plaintiff was hit by a car; evidence of a plan to convert the killing of Plaintiff's rabbits into a spectacle for widespread amusement, evidence of a plan to set up and impress Plaintiff, control Plaintiff's consciousness, and dictate Plaintiff's major life choices while Plaintiff was still very young, 14 or 15 years old, with further harm and a statement that Plaintiff's problems are just beginning, at age 33, near representations of a plan by the CIA to directly sell me drugs, and an apparent opposing plan, developed or at least stated near in time, by other Defendants to sue the CIA, a plan to attack harm and upset Plaintiff's cats, at Plaintiff's Lemon Grove residence, a plan

to interfere with Plaintiff's sleep by loudly bouncing a basketball, and probably a plan to influence Plaintiff's response to that nuisance, and a plan to cause Plaintiff to move to Minnesota, a recent plan to behave 'overly aggressively' toward Plaintiff, a blatant plan to injure Plaintiff when Plaintiff arrived in Minnesota by shooting energy at Plaintiff's face and eyes; and even a plan to influence Plaintiff's FOIA litigation, in particular the Secret Service claims relating to Bush, a plan to file a fraudulent report harming Plaintiff, and even a plan to create some of the claims set forth in this, Plaintiff's newest, complaint;

40)    Plaintiff asserts Defendants have committed fraud on the court in concealing information and securing the court's participation in Defendants' schemes, and have also committed fraud towards Plaintif, but otherwise takes no position here regarding accrual issues; Plaintiff cannot afford to these ignore legal statements and risk a ruling that the statute has run re the actual or correctly identified date of accrual.

## Right To Self-Representation

41)    Plaintiff did not consent to any alternate forum or method of adjudicating his claims; and as there has been a pattern of concealment, would not consent; alternatively, Plaintiff's claims were or are being adjudicated in circumstances where Plaintiff was fraudulently imprest or otherwise illegally maneuvered into circumstances where such adjudication could be imposed, by individuals who must have known of and had ready access to exculpatory facts;

42)    An individual of indeterminate affiliation within the federal government have advised Plaintiff that said individual accepted an agreement on Plaintiff's behalf that would permit harm to Plaintiff for a fixed period, perhaps amounting to a plea bargain permitting the imposition of punishment, in exchange for benefits and perhaps to satisfy a perceived debt to society;

43)    Plaintiff was not presented with this agreement, did not accept it, has not ratified it after the fact, and has not relinquished Plaintiff's right to self-representation; any individual purporting to act on Plaintiff's behalf had access to facts demonstrating Plaintiff's lack of culpability in relation to any and all allegations, and must have known of Plaintiff's standing objections to any harm for benefits scheme or any attempt to usurp Plaintiff's rights to make such decisions;

44)   Other Defendants in state and federal government must have known Plaintiff did not consent to this agreement, though they nevertheless acted to carry out the harmful, oppressive, and unfair terms of the agreement;

45)   Plaintiff believes that other agents and officials in the federal government have, in the past, attempted to make similar deals;

46)   These attempts constitute interferences with Plaintiff's rights under the first, fifth, sixth, eighth, and fourteenth amendments;

47)   Plaintiff has discovered new facts demonstrating the longstanding existence of an illegal plan to deprive Plaintiff of the ability to litigate his claims, including further proof of a plan to impress Plaintiff and a plan to concoct one or more rationales for keeping the case out of open court, along with a plan to force Plaintiff to leave California by filing fraudulent claims and/or abusing the judicial process to gain illegal leverage against Plaintiff;

48)   The CIA advised Plaintiff that Plaintiff's employment was unclassified, in and around 2000, and Plaintiff's own analysis is in accord with that representation; Plaintiff has been advised, by others with extensive knowledge of the facts of Plaintiff's case, that they agree with Plaintiff, which in context appears to include agreement with Plaintiff's ability to proceed in open court.

## Personal And Official Capacity

49)   All Defendants acted individually and are being sued in a personal capacity; alternatively, Defendants actions involved an official policy or custom, legal or illegal, and are also being sued in their official capacities as agents, contractors, or employees of the U.S. government and/or the City and County of Los Angeles.

## Res Judicata and Collateral Estoppel

50)   Federal Defendants have perpetrated fraud on the court, and enlisted the aid of the courts to deprive Plaintiff of Plaintiff's constitutional rights, for several decades.  While the instances of fraud are too numerous to list here, Plaintiff has attached exhibits to the complaint documenting Plaintiff's connection to the CIA, Exhibits 1 and 2, demonstrating Plaintiff's attempts to litigate Plaintiff's own case,  Exhibits 3 and 4, and stating conditions for continued interaction with the intelligence community as soon as Plaintiff understood the community's rationale for imposing costs on Plaintiff , Exhibit 5; Defendants essentially responded to this statement by foreclosing Plaintiff's other avenues of employment.

## Judicial Immunity

51)     The doctrine of judicial immunity set forth in Forrester v. White should not extend to judicial or quasi-judicial decisionmaking, in any state or federal court at any level, that is criminal or amounts to participation in a conspiracy, and the rationale for such immunity has no place in such circumstances, nor is immunity applicable to administrative or executive actions of judicial officials.

**Retaliation and Use**

52)     Plaintiff contends Defendants have refused to compensate him on just claims with a goal of using him in harmful and dangerous ways.

53)     Plaintiff has repeatedly protested such use, and has gone so far as to notify legislators that he was 'consenting in the abstract' to harm done by targets of sting operations, in order to dissuade Defendants from using him and to improve Plaintiff's chances of finding alternate employment;

54)     Plaintiff is currently refusing to make claims or charges against such targets, and is only making claims against those individuals responsible for harming Plaintiff under color of right or by using Plaintiff without Plaintiff's meaninful consent;

55)     Plaintiff was assaulted after drafting the initial version of this complaint, and continuously assaulted while making revisions and additions.

56)     Close to the discovery deadline in the 01-4340 case, November 2007, a rabbit in Plaintiff's care was killed; in early 2008 another rabbit in Plaintiff's care was killed, and over a 2 year span Plaintiff has discovered many, many retaliatory messages connected to these deaths; Plaintiff has subsequently been confronted with many dead animals (squirrels, opossum, cats, pigeons) left in his path or on roads he customarily travels, and has heard threats against his cats, and has on many, many occasions witnessed his cats crying from Defendants' attacks;

**Tort Claims**

57)     Plaintiff's tort claims relate to events from the mid-70's to the present;

58)     As Plaintiff's APA and FOIA representations demonstrate, the federal government has not been forthcoming as to who has been employing him, using him in government operations, or monitoring him in his dwelling and online over the course of several years, and Defendants are duplicitous and prone to framing and misinformaton; accordingly, Plaintiff has stated each claim against all Defendants.

59)    Plaintiff alleges a civil conspiracy with regard to every claim for relief set forth below: Defendants participated in a one or more conspiracies and thereby adopted as his or her own the torts of other co-conspirators within the ambit of each conspiracy, incurring tort liability co-equal with the immediate tortfeasors; there has been such a high degree of awareness of the way in which the community has controlled Plaintiff's life that it's very unlikely that he was victimized by a set of discrete acts instead of by a common plan or set of common plans: in the 1970s or earlier some members of the intelligence community embarked on a plan to employ Plaintiff in the entertainment industry/Hollywood, manipulating his close relationships, consciousness, and circumstances in a way they thought would move him in the direction of their goal.

60)    These Defendants did not obtain Plaintiff's consent or advise him of their plans, and manipulated Plaintiff's life in ways that were at odds with his existing relationships, plans and desires.

61)    It is Plaintiff's understanding that, over the course of decades and prior to his recruitment, these Defendants secured legislative and/or judicial approval by fraudulently advising these officials that they had grounds to impress Plaintiff, by smearing Plaintiff's character in secret proceedings, and by failing to advise these decision-makers of Defendants' own conduct, which involved manipulating Plaintiff's consciousness and behavior using a variety of scientific techniques, a form of control at odds with every Supreme Court statement Plaintiff has ever read pertaining to the individual's absolute right to control his or her own beliefs and conscience;  Defendants manipulated Plaintiff's consciousness while generally controlling the course of Plaintiff's personal and economic options, even tampering with Plaintiff's ability and interest in finding alternate employment.

62)    Defendants have admitted that at least one judicial official was aware of the illegitimate and illegal bases of Defendants' conduct but issued one or more orders permitting the community to use Plaintiff as a pawn without his knowledge or consent.

63)    Plaintiff has also determined that many government inspectors are aware, and have long been aware of the illegal conduct of these Defendants but saw an opportunity to use Plaintiff as bait to trap other Defendants and without justification used Plaintiff accordingly.

64)    This use typically occurred without Plaintiff's knowledge or consent, never occurred with Plaintiff's informed and legally cognizable consent, and was rarely if ever a necessary step in acquiring or producing exculpatory facts;

65)     Apparently during the 80's, though perhaps earlier, other plans affecting the course of Plaintiff's life arose in government and industry circles: some saw Plaintiff's plight as an opportunity to expose government abuse or saw potential political benefits to developing the drama, while others saw an opportunity to exploit Plaintiff and steal Plaintiff's creative expressions and intellectual property, while according Plaintiff the rights of an imprest person.

66)     Plaintiff is thus distinguishing these conspiracies:  individuals who framed and wrongfully imprest Plaintiff without his knowledge or consent (generally, individuals in the US intelligence community and FBI), individuals who used Plaintiff as bait and pretended to be unaware of exculpatory evidence (generally, government inspectors and some FBI agents and law enforcement officials, though more recently right wing government inspectors acting over the objections of other inspectors),  and individuals who took Plaintiff's creativity without his knowledge or consent (one or more intellectual property theft rings).

67)     Those individuals who were responsible for overseeing Plaintiff's situation and advising him had fiduciary obligations to Plaintiff, and those who sought to or actually impressed Plaintiff had a duty to disclose the nature of their claims and provide Plaintiff with an opportunity to offer exculpatory evidence.

68)     All Defendants, either directly or indirectly have interfered with his pursuit of his life's goals and his ability to marry and have a family.

69)     Intelligence community Defendants have been disciplined for most or all of the harm they have done to Plaintiff.

70)     Most of the information regarding plans to use Plaintiff in these ways comes from evidence Plaintiff discovered and began to analyze approximately 7 years ago, though much of this dovetails with Plaintiff's recollections and analysis performed after Plaintiff became aware of the community's presence.

71)     Over the course of 30+ years Defendants have planned and/or controlled and/or dictated the course at least 5 of Plaintiff's closest romantic relationships and have also, in general, interfered with his intimate relations throughout the course of Plaintiff's life.

72)     Over the past 6-7 years Plaintiff has discovered evidence of, inter alia, intelligence community plans to to modify Plaintiff's preferences, beliefs, and behavior by using scientific methods, plans to create and then disrupt his personal relationships, plans to interfere with his academic pursuits, plans to destroy his legal career, plans to cause him

emotional and physical distress and offer him stimulants, and plans to mislead him and use him in law enforcement operations without his knowledge or consent.

73)   Defendants tampered with Plaintiff's subconscious using such methods as hypnosis, subliminal images, and suggestion delivered to him while he was asleep, and interfered with his cognition and deleteriously affected his behavior.

74)   In 1991 or 1992 Defendants intentionally gave him faulty medical advice, increasing his back pain and worsening his scoliosis; for approximately a year Plaintiff wore a heel lift after being advised his legs weren't the same length, a diagnosis was made for reasons unrelated to proper medical care; early in 2002 a specialist at Kaiser informed Plaintiff that his legs are of the same length and have been the same length his entire adult life.

75)   In the early 90's Defendants manipulated events in Plaintiff's life to create emotional, physical, and economic hardship while attempting to using scientific techniques to control Plaintiff's ideation, beliefs, mood and control his consciousness at a subconscious level.

76)   Defendants devised a plan to hook Plaintiff on methamphetamine and use him in government operations in, at the latest, 1992; Plaintiff has discovered new evidence that the drugs were supplied directly by the intelligence community, as well as direct statements of plans to interfere with any alternate employment and coerce Plaintiff's employment.

77)   Uusing such techniques while physically and emotionally harming Plaintiff, Defendants—at least some of whom owed fiduciary obligations to Plaintiff--attempted to manipulate Plaintiff into committing criminal acts.

78)   From 1993-1996 Defendants interfered with Plaintiff's legal career and his attempts to find temporary work.

79)   Near the time of the second eviction Defendants followed Plaintiff and some represented that they were connected to organized crime and engaged in threatening behavior that made Plaintiff reasonably fear for his life, and Plaintiff has recently discovered evidence of that plan;

### Coercion, Compelled Speech, Fraud, Unconscionable Behavior, and the Absence of Consent

80)   Defendants also tampered with Plaintiff's consciousness without Plaintiff's knowledge or consent, in an effort to make Plaintiff more susceptible to manipulation.

81)   Defendants fraudulently induced Plaintiff's participation in their plans by failing to disclose facts to Plaintiff that would establish complete defenses to the threatened criminal

prosecution and by indicating they would save him from further harassment and give him a means by which he could marry his fiancee and raise the child he was planning to adopt, and by tampering with his subconscious without Plaintiff's knowledge or consent, which served to make him more susceptible to manipulation and enabled Defendants to override his decision-making abilities.

82)   In 1996 through a combination of conscious and subconscious stressors Defendants brought Plaintiff to the brink of suicide, and directed subconscious suicidal impulses to Plaintiff; Defendants did not offer to provide Plaintiff with psychological assistance or provide Plaintiff with genuine counseling, and interfered with Plaintiff's attempts to seek independent counseling, though Defendants took advantage of their wrongdoing by characterizing Plaintiff's behavior and decisionmaking in this period without reference to necessary psychological data;

83)   Plaintiff believes he was suffering from traumatic stress in the mid-late 90's, and contends Defendants by their wrongful conduct are estopped from relying on their own mischaracterizations;

84)   Defendants have perhaps done permanent damage to Plaintiff's concentration and cognition as a result of directly harming or intentionally exposing Plaintiff to harm on thousands of occasions.

85)   On dozens or hundreds of occasions over the past 10 years---far too many to list--- Defendants responded to Plaintiff's critiques and acts of petitioning with threats and violence and with allegations they knew were baseless or very misleading.

86)   Plaintiff has not meaningfully consented to government employment or to work as a contractor of the federal government or US intelligence community, and in fact has consistently rejected Defendants' (typically extreme) harm for benefits plans as soon as Plaintiff was advised of the rationale for the harm; Defendants coerced Plaintiff's participation by shows of force, by unrelenting harassment, and by fraudulent threats, and also fraudulently induced Plaintiff's cooperation by making false statements to Plaintiff and to decisionmakers and to potential employers, and by damaging Plaintiff's reputation, and by engaging in economic coercion, and by constantly assaulting Plaintiff, and by using scientific techniques to compel and control Plaintiff's speech without Plaintiff's knowledge or consent.

87)     A number of government officials, including those most familiar with Plaintiff's claims, have indicated they do not believe Plaintiff's claims are Totten barred, a representation that corresponds with the CIA's representations to Plaintiff in and around 2000.

88)     From 1996-2000 Plaintiff was advised on a number of occasions that Plaintiff "free to leave" though Plaintiff's attempts to find alternate work or even interview for alternate employment was unsuccessful; near this time Plaintiff was also advised that, when a good offer came, Plaintiff would be be free to go, and that Defendants expected such an offer to come from the entertainment industry.

89)     Defendants have repeatedly interfered with Plaintiff's opportunities by one means or another, including attempting to impress Plaintiff or extend Plaintiff's impressment, by agitating Plaintiff and interfering with Plaintiff's ability to be a sociable and attractive candidate, by defaming Plaintiff and by pressuring potential employers.

90)     For many years Defendants fraudulently attributed Plaintiff's inability to find work to Plaintiff's own indolence.  Plaintiff was at one point signed up with approximately 8-10 temp agencies, which Plaintiff called every morning in an attempt to find work; during this time Plaintiff also sent out hundreds if not thousands of applications for high and low paying jobs over the past decade; Plaintiff is a decent worker at least, with a good resume.

91)     Plaintiff has applied for, e.g. legal research positions, night watchmen positions, retail sales positions, teaching positions, moving and manual labor positions, and government office work. without success.

92)     On most if not all occasions calls for potential employment came from individuals or entities within the intelligence community not identifying themselves as such, and these individuals and entities were more interested in wasting Plaintiff's time, discouraging Plaintiff from further searching, and looking for pretextual criticisms than they were in hiring Plaintiff; on some occasions Plaintiff was hired on for short periods and fired for pretextual reasons.

93)     After Plaintiff began to petition, in 2000, Defendants changed their account considerably, and Plaintiff began to hear talk, which persists to this day, that Plaintiff owed and had to pay insurance to avoid prosecution.  Defendants continuously referred to harm Plaintiff suffered as punitive, and Plaintiff believes that many Defendants are in fact

punishing Plaintiff without any unusual justification and without resorting to any adjudicative process at all.

94)     Plaintiff has repeatedly advised Defendants that he does not consider himself an employee or contractor of the US government, that Plaintiff's employment is coercive and illegal and against a backdrop of government's illegal refusal to provide Plaintiff with money Plaintiff is owed, and has recently noted that some individuals—either individuals acting investigating his background for any number of purposes or individuals charged with advising Plaintiff of official decisions—have for a number of years been seeking to add grounds for impressment; these grounds go beyond any discussion Plaintiff ever had with any person he perceived to be a representative of the federal government, and could not under any circumstances be considered part of an employment or plea bargain.

95)     Moreover, Plaintiff has repeatedly advised inspectors that they were potential Defendants, that he did not consent to their representation of him, and that they had a conflict and thus were not authorized to represent him.

96)     Both before and after seeing evidence of concealment, Plaintiff has repeatedly rejected any suggestion of enduring harm as insurance against prosecution, as Plaintiff has been and continues to be certain that Plaintiff can, with the help of the police, demonstrate the fraudulent nature of any such charges; while drafting one portion of this complaint—30+ hours of constant assault--Plaintiff received a call from someone purporting to provide such insurance and stating, close paraphrase, that he had Plaintiff covered, for any potential missteps related to filing this complaint;

97)     Plaintiff doesn't need such insurance though the call is absolutely in keeping with a long-running federal prosecution insurance scam, in which Plaintiff is used and harm to Plaintiff is marketed, apparently by individuals who do not have a legal background and are not capable of making even basic distinctions between legal and illegal behavior; it appears that in some cases these individuals proceed by making an inquiry of a judicial official by misstating facts and not disclosing exculpatory facts, obtain an opinion that some act might be legally questionable, and thus coerce insurance costs fraudulently, profiting from their corruption and incompetence.

98)     Government agents and officials have thus lied to the judiciary, impressed and harmed Plaintiff on fraudulent grounds, and deceived Plaintiff; all courts have the inherent power to enter orders nunc pro tunc, and Plaintiff is entitled to a nunc pro tunc judgment

providing Plaintiff with injunctive relief requiring Defendants to take reasonable steps to provide Plaintiff with non-governmental work, and to otherwise leave Plaintiff alone.

99)    Defendants' persistent efforts to harm Plaintiff on such pretexts demonstrate a commitment to retaliating against Plaintiff for refusing to participate in an illegal and exploitive government plan, a plan that is in some cases dependent upon creating crime as a means of gaining leverage over and controlling sting targets, and creating candidates for impressment, essentially creating involuntary servitude through fraud.

100)   While Plaintiff has prevailed upon many in government to stop this unconscionable conduct, many, exclusively or almost exclusively right wing government officials, including but not limited to inspectors and law enforcement, acting in accord with a right wing plan, feigned ignorance of key evidence that would exculpate Plaintiff, restore Plaintiff's reputation, and create social and employment options where few exist, and thus are responsible for much of the recent harm to Plaintiff.

101)   Plaintiff has repeatedly noted the coercive and involuntary nature of Plaintiff's circumstances, and these individuals have long been aware of Plaintiff's objections to being used in government operations; some of these individuals, particularly government inspectors, have long had the ability to order improvements in Plaintiff's living conditions and safety, but instead have directly stated retaliatory intentions and have attacked Plaintiff on the barest pretext; acting under color of their authority, without notice or a hearing, providing a retaliatory explanation in some cases, though often without providing any explanation at all; for many years now these Defendants have essentially attacked, and continue to attack, a political and ideological opponent at will, for political purposes; and Plaintiff accordingly contends that the statutes empowering these individuals, including 50 USC 403 et seq and 50 USC chapter 15, are unconstitutional as applied;

102)   Defendants have displayed an m.o. of engaging Plaintiff in vague conversations and feigning belief that Plaintiff's responses amount to consent to participate in intelligence and law enforcement operations, ignoring hundreds or thousands of contrary pronouncements Plaintiff has made over the course of many years;

103)   Defendants have stated, erroneously, that Plaintiff has independent authority to enforce the law, portraying Plaintiff as an inspector; Plaintiff isn't an inspector, has not accepted any such responsibility, and routinely complains to governmental officials of

Defendants' wrongdoing, often noting that these individuals have access to all sides of any issue, and are thus better situated to make such decisions;

104)   Defendants have apparently attacked or harmed Plaintiff's friends, falsely stating that they were carrying out Plaintiff's will, while cutting Plaintiff out of any dialogue that would permit a resolution of any issues Plaintiff might have;

105)   Plaintiff has documented a long history of assault and retaliation in connection with making public criticisms of Republican leaders; for example, in related case 08-5515 Plaintiff sought documents from a number of government agencies under the Freedom of Information Act; one or more of these agencies produced documents designed to embarrass Plaintiff and interfere with Plaintiff's privacy, while failing to produce even a single document that demonstrates the validity of even a single claim made by Plaintiff, despite dozens of government admissions of culpability; and many of the assaults cited by Plaintiff in the Seventh Claim for relief, below, came near in time to Plaintiff's criticisms of right wing tactics, and Plaintiff has in fact been advised that some of the assaults were purely political;

106)   Defendants produced documents wrongfully and deceitfully suggesting Plaintiff was violent or dangerous, and Plaintiff responded by producing documents mocking former Republican leaders: these documents and Plaintiff's testimony demonstrate Plaintiff is only disposed to engage in and has only engaged in sharp verbal criticism;

107)   Soon after Plaintiff filed a response to the defamatory presentation, Plaintiff was advised that one of these Republicans had 'won'—perhaps a false statement, perhaps a secret meeting of Republicans or a secret hearing occurring in Plaintiff's absence; and that the Republican response would be to assault Plaintiff for a few months; Plaintiff has in fact been assaulted on a daily basis since hearing of the Republican plan;

108)   These Defendants were instrumental in commandeering Plaintiff's life and have sought to capitalize on the unfortunate circumstance they created, devising scenarios intended to defame and embarrass Plaintiff, and intended to prevent Plaintiff from finding any other opportunities that would move Plaintiff towards economic independence.

109)   These Defendants are thus engaged in a criminal conspiracy motivated by retaliation and the desire to avoid exposure, and are intent on destroying Plaintiff's health, physical appearance, social and economic options, and reputation.

**Vested Rights in Accrued Valid Claims**

110) Defendants have committed tortious acts against Plaintiff and Plaintiff is entitled to compensation; Plaintiff has vested rights in this compensation and Defendants refusal to compensate him is fraudulent and unconstitutional.

111) Plaintiff has not intentionally or voluntarily relinquished or circumscribed his constitutional rights to privacy, due process, equal protection, petitioning, and speech, though Defendants have routinely interfered and continue to interfere with Plaintiff's rights and have thereby prevented Plaintiff from converting valid legal claims to damages, and Defendants are able to engage Plaintiff in work-related conversation only because they have thus far refused to compensate Plaintiff for their illegal acts;

112) Nevertheless Plaintiff believes Defendants have maintained records relating to him and that these records may identify him as a past employee or contractor, or perhaps pawn, of the federal government.

113) Plaintiff typically does not bargain with Defendants on their terms, has loudly and repeatedly rejected a governmental presence in his home;

114) Plaintiff has repeatedly rejected any alternate system of adjudication, re-affirming Plaintiff's right to proceed in open court, Plaintiff has also repeatedly conditioned Plaintiff's interaction with government on the absence of harm or hidden costs;

115) Defendants, by contrast, have sought to harm Plaintiff for any reason they could find, and have stated that intention blatantly on at least one occasion;

116) Defendants have even gone so far as to attempt to force a harm for benefits scheme upon Plaintiff wherein Plaintiff would pay costs for, e.g., renewed contact with old girlfriends or fiancees, relationships Defendants damaged or ruined years earlier;

117) Defendants have, over the years, set Plaintiff up and otherwise interfered with Plaintiff's academic goals, interfered, by harassment and fraud, with Plaintiff's legal career, and sabotaged and deleteriously affected Plaintiff's chances of finding lucrative work in the entertainment industry or as a writer;

118) Defendants responded by preventing Plaintiff from finding other opportunities, in an attempt to coerce Plaintiff's participation in their plans.

119) Defendants have also effectively prevented Plaintiff from finding other work by damaging his reputation and pressuring would-be employers; over the years Plaintiff has, on hundreds or thousands of occasions, sought employment that would eliminate the

possibility that Defendants would seek to employ him (by contacting  him with disguised or vague offers in an effort to justify their continued presence in his life);

120)   Defendants have repeatedly represented to Plaintiff that they didn't think his efforts to find other work were 'serious', while denying him the opportunity to prove otherwise;

121)   For many years Defendants and individuals in the intelligence community harmed Plaintiff and used him without Plaintiff's consent, at times representing they employed Plaintiff, at times asserting the equivalent of an impressment right;

122)   Other Defendants represented that they had a right to use Plaintiff whenever he expressed an interest in whatever career or dating opportunities they offered.

123)   Plaintiff repeatedly advised Defendants that he was unwilling to engage in any conduct, including negotiation, that permitted government to harm him and override his ordinary rights.

124)   Because Defendants had taken steps to rig the employment market against Plaintiff, and because Defendants pressured potential private employers not to hire Plaintiff, Plaintiff was forced to continue to work and communicate with Defendants in opprobrious circumstances.

125)   Plaintiff has often analogized Plaintiff's situation to an individual kidnaped and taken to an island, where the conditions ranged from tolerable to torturous, though always against, a salient and dispositive fact, a backdrop of coercive and unconscionable conduct; at least some Defendants have expressed general agreement with his analogy.

126)   Plaintiff has been told, on a number of occasions over the years, that Defendants have continued to apply pressure and/or take retaliatory action against potential employers to prevent them from hiring him, and has also observed a change in the responsiveness of potential employers.  Within the past 2 months Plaintiff has found evidence of a plan to impress Plaintiff or accomplish the same by depriving Plaintiff of other alternatives.  .

127)   Defendants have, on at least one occasion, drugged Plaintiff prior to an interview, and have, by attacking Plaintiff regularly over the course of many years, interfered with Plaintiff's mood, sociability, and reputation, and have thereby severely hampered Plaintiff's efforts to find other work; whether this pressure has been constant or not, it has been timed to prevent Plaintiff from finding employment at any time Plaintiff would, as a matter of fact, seek employment (i.e., any time he wasn't deeply involved in his petitioning or actively earning an income)

128)   Defendants have also interfered with Plaintiff's efforts to date.

129)   Against this backdrop of unconscionable interference with his autonomy—in the wake of ruined careers, illegal interference with other options and ruined relationships-- Defendants have made numerous offers to Plaintiff; Plaintiff has repeatedly advised Defendants that Plaintiff would consider any such offer as a settlement offer, but would not accept any offer that imposed further costs;

130)   Plaintiff has expressly conditioned his willingness to enter into negotiations on the absence of any harm, has on many many occasions noted that, in the event any conversation or interaction was vague or ambiguous, nothing Plaintiff said or did should be construed as a departure from this position, and often expressed, e.g., that Plaintiff would not accept any deal that involved imparting benefits to Plaintiff in exchange for subjecting Plaintiff to harm or risk of harm; Plaintiff was advised that this position was well-understood;

131)   Defendants have interfered with Plaintiff's attempts to be free of Defendants' interference with Plaintiff's life and consciousness, and are engaged in a continuing interference with Plaintiff's rights;

132)   For many years Defendants have been on notice that Plaintiff objected to any and all attempts to use or subject Plaintiff to harm;

133)   Plaintiff has been economically distressed and anxious many times over the course of the past 14  years;

**Interference with Intimate Relations**

134)   Plaintiff and his fiancee and her daughter went to Minnesota in the summer of 1996, in part to escape the traumatizing effects that had occurred in the prior months in Los Angeles.

135)   Plaintiff returned to Los Angeles with his fiancee and her daughter in late summer, intending to stay with his fiancee's parents.

136)   In accord with what Plaintiff later learned was Defendants' plan he fought with his fiancee and was forced to live elsewhere.

137)   During this time Plaintiff had difficulty securing employment and was close to broke for a number of months.

138)   Plaintiff went homeless in October or November 1996 on Defendants' representations that doing so would expedite a reunion with his fiancee and remained homeless until September 1997; Plaintiff was physically active, approximately 12 hours a day while he was

homeless—Some Defendants initially characterized Plaintiff's activities as community service, while other Defendants subsequently characterized the activity as work, though Plaintiff was not paid.

139)  Plaintiff and his fiancee continued to have conflict in conversations they had while Plaintiff was homeless.

140)  In accord with Defendants' plan, others taunted Plaintiff with the fact that he couldn't be with his fiancee and provided many false reports as to when and how they'd be reunited.

141)  Plaintiff believed that further attempts to reconcile with Plaintiff's fiancee would, as a result of systemic corruption, provoke conflict and yield a police response.

142)  Defendants created and otherwise were responsible for Plaintiff's relationship problems and had an obligation to help Plaintiff;

143)  Plaintiff's homelessness was marked by the abuse experienced by the homeless generally eating leftovers on dining tables in public areas, scrounging for food in garbage dumpsters, was mistreated by most of the people with whom Plaintiff interacted, and Plaintiff was twice tricked into drinking urine left out in beverage containers.

144)  Defendants regularly ran their cars at Plaintiff when Plaintiff was homeless and bicycling; acting in accord to plan one Defendant intentionally ran his car into Plaintiff in the summer of 1997, sending Plaintiff to the hospital in an ambulance with cracked or badly bruised ribs.

145)  Near that time Plaintiff was assaulted and temporarily knocked unconscious on Venice Beach.

146)  Plaintiff returned to Minnesota in September 1997 and worked low-paying jobs in Minnesota for the next two years with little or no understanding of how the community had manipulated his life, returning to Los Angeles in December 1999 on representations that Plaintiff's treatment would improve;

147)  Defendants advised Plaintiff that they didn't intend to answer Plaintiff's questions in and around 1997, and related to Plaintiff that they noticed that Plaintiff didn't understand some of their communication;

148)  For years Plaintiff was unable to obtain information bearing on his claims because he lacked an understanding of intelligence community communication, because the community didn't provide him with such information, because Defendants and because Defendants, using scientific techniques, conspired to influence or control his consciousness, mood,

ideation, and beliefs, and because Defendants conspired to assault and batter Plaintiff or deliberately took steps to place him at risk of the same,  and because Defendants engaged in a pattern of misinformation and disinformation, some of these Defendants ignoring their fiduciary obligations to help Plaintiff and provide Plaintiff with information.

149)   Plaintiff began to notice similarities between the events in the mid-90s and his earlier life some time after returning to Minnesota or perhaps when he returned to California in April or May 2000, and began to believe that Defendants had been repeating patterns of interference, and that these patterns had been in place for decades.

150)   Plaintiff began to petition legislators and intelligence community officials in the spring of 2000, and filed a suit against the community in the Summer of 2000 upon returning to Minneapolis for a few months.

151)   Near that time Plaintiff became very angry and had hostile interactions with Plaintiff's parents and siblings, Plaintiff has subsequently discovered evidence that Plaintiff's mood and decision-making was being affected by subconscious techniques and/or drugs/chemicals during that time.

152)   In response to Plaintiff's petitioning Defendants began to assault Plaintiff on a regular basis, a pattern that has continued for 10 years; Plaintiff's food was spiked with amphetamines and other stimulants, detergents, rubbing alcohol, insecticide and other unknown toxins, prescription drugs, over the counter drugs, and harmful bacteria and fungi; Defendants also harmed and sought to harm Plaintiff by giving Plaintiff hazardous work.

153)   Some Defendants directly assaulted Plaintiff, while, at least for many years, other Defendants failed to offer Plaintiff adequate protection or guidance as to how to avoid these spikings;

154)   In many case Defendants have used scientific techniques to modify Plaintiffs decision-making and induce Plaintiff to purchase and consume toxic products.

155)   Plaintiff has only recently (ie, within the 3-4 years) learned that Defendants have been employing techniques of subconscious control to influence and control Plaintiff's behavior, including but not limited to word choice, decision-making, and preferences; Defendants did not at any point directly advise Plaintiff that they had subjected Plaintiff to such techniques for decades, though the equivalent point has been made clearly, in evidence Plaintiff has been analyzing over the course of the past 6-7 years.

156)   Most Federal officials commenting on Plaintiff's case have conceded that Plaintiff's analysis is by and large correct, though Plaintiff is certain that many government decisionmakers knew of the accuracy and validity of his claims many many years ago.

157)   Plaintiff didn't have, nor could he have had (sufficient) knowledge of the methods of communication or identities of the wrongdoers/intelligence community members to understand the effects they had on his life until recently.

158)   Plaintiff has been diligent in documenting Defendants' wrongdoing after learning there was external evidence corroborating Plaintiff's perceptions.

159)   For many years higher ups in the intelligence community were aware of Plaintiff's circumstances and legal contentions and failed to provide accurate information to judicial and legislative officials, thereby causing harm to Plaintiff;

160)   Defendants provided decision-makers with bogus psychological profiles and personality assessments and ignored key evidence—incredibly obvious evidence of community frames and speech and behavior manipulation--in an attempt to convince them that Plaintiff needed insurance or posed security risks, and sought to create legal trouble of any sort for Plaintiff whenever they had the opportunity;

161)   For example: Plaintiff has been a social drinker without a history of drug or alcohol abuse over the course of his entire life, excepting the 3 years that he was using stimulants; Plaintiff stopped taking drugs in 1996 and essentially quit drinking as well in and around 1996-1997; several years ago Plaintiff began to drink to reduce the pain caused by Defendants' attacks; over the past 4-5 years Plaintiff has noticed a pattern of attacks occurring when he hasn't drank/isn't intending to drink, and has drawn the inference that Defendants are intentionally seeking to promote his drinking, presumably to support a false representation made to decision-makers, that Plaintiff is chemically dependent or prone to alcoholism;

162)   Defendants have, during this time, also used scientific techniques to control or influence Plaintiff's behavior, and have thereby induced his consumption of alcohol;

163)   In every case in which Plaintiff mentions employees of the City or County of Los Angeles Plaintiff alleges they were acting under color of law.

164)   Despite their own awareness of evidence that would exculpate or excuse Plaintiff; Federal law enforcement officials and inspectors, operating at times with the Los Angeles

Police Department, began using Plaintiff as bait in increasingly harmful and/or dangerous ways, subsequent to his petitioning;

165)    The combination of these factors severely damaged Plaintiff's ability to develop productive or even civil business relationships with entertainment industry personnel.

166)    Some or all of these industry Defendants monitoring Plaintiff in Plaintiff's home and elsewhere without Plaintiff's knowledge or consent and took Plaintiff's intellectual property.

167)    Defendant inspectors and law enforcement officials failed to disclose facts to Plaintiff or the court that would have enabled Plaintiff to obtain injunctive relief allowing Plaintiff to earn a safe living while Plaintiff sued;

168)    Subsequent to Plaintiff's petitioning, which began in the fall of 2000, Defendants have taken 10 good years of life from Plaintiff, and replaced them with 10 years of pain, poverty, aggravation, distress and, at times, torture.

169)    Plaintiff should have been compensated for his just claims in a timely manner and should not have had to continue to interact with government personnel;

170)    While Plaintiff remains in control of Plaintiff's legal claims, Defendant inspectors had an obligation to prevent further harm to Plaintiff, and to allow Plaintiff to litigate free from continuing harm;

171)    Decision-making Defendants erroneously claimed Plaintiff had to endure various sorts of harm and risks of harm to pay various 'insurance' costs (to prevent criminal prosecution) and failed to provide Plaintiff with a complete and accurate account of what they knew or advise Plaintiff what they knew of other Defendants' patterns of wrongful behavior, forcing Plaintiff to spend years documenting exculpatory facts (and documenting that Defendant inspectors were aware of these exculpatory facts).

172)    Defendants applied unconscionable and/or illegal pressure and/or fraudulently induced Plaintiff to secure Plaintiff's participation in stings

173)    Defendants often simply used Plaintiff without comment or explanation, sometimes offering multiple explanations or failing to correct multiple justifications offered for wrongdoing, and sometimes maliciously and in retaliation for Plaintiff's petitioning, and caused Plaintiff to be harmed without legal justification and without securing Plaintiff's informed consent, and whatever consent they did obtain from Plaintiff, for any given plan

of action, was obtained without disclosing what they knew of other Defendants' role in Plaintiff's past and without disclosing other important aspects of their plans.

174)     Defendant Inspectors and Defendants in law enforcement also used Plaintiff in operations that were not even remotely related to Plaintiff's career goals or petitioning goals, without Plaintiff's knowledge and consent, and it is Plaintiff's understanding that Defendant inspectors/Defendants engaging in law enforcement often proceeded by giving some target a reason to dislike or want to harm Plaintiff, and thus often used Plaintiff as bait without Plaintiff's knowledge or consent.

175)     Defendant inspectors and Defendants engaging in law enforcement also harmed Plaintiff and damaged Plaintiff's petitioning efforts by using him to sting government officials, including members of Congress, at a time when it appeared that only Congress could or would provide Plaintiff with the petitioning relief he sought, thereby continuing Plaintiff's dependence on Defendants.

176)     All Defendants are partially responsible for harm to Plaintiff and many had the ability and the obligation to prevent most of the harm to Plaintiff.  Any group of conspiring Defendants could have offered enough in compensation to allow Plaintiff to take steps to increase Plaintiff's own security and all could have taken other steps to help Plaintiff; .

177)     Plaintiff contends that the failure of all Defendants to offer such compensation was in furtherance of a joint plan to use Plaintiff without Plaintiff's consent and to control his destiny;

178)     Government Defendants could have used their influence with industry Defendants to improve Plaintiff's situation, simply by pointing out, e.g., that industry Defendants bore some responsibility for damaging Plaintiff's career prospects and relationships over the prior decades;

179)     Government Defendants instead gave improbable accounts of the industry's unwillingness to listen to reason.

180)     The combined effect of these various sorts of sabotage, deceit, and personal injury have led many to resent Plaintiff and vice versa.

181)     Taking into account costs and benefits Plaintiff would have found acceptable, there were a number of acceptable scenarios that would have resulted in a successful, non-traumatic entertainment industry career, including but not limited to scenarios in which Defendants provided forthright and complete (and legal) responses to Plaintiff's petitions.

-28-

182)     Defendants have on a number of occasions linked Plaintiff's ability to date to his willingness to abide by their norms and cease petitioning;

183)     Defendants have interfered with Plaintiff's personal options by defaming him, by harming individuals that expressed an interest in him, and by repeatedly attempting to create legal problems of various sorts.

184)     Defendants have used these and similar tactics to interfere with Plaintiff's economic opportunities and privacy, and used the condition of coerced interaction to continue to harm Plaintiff any way they could.

185)     More recently Defendants have accused Plaintiff of deception regarding a back injury he suffered in the summer of 2000, and have retaliated by attempting to have him perform other tasks likely to cause back pain/injury and by drugging him-events well-correlated with remarks and other references/symbols/signs of the claim.

186)     Defendants have also engaged in private and public nuisance behavior, and interfered with the flow of traffic during rush hours on major Southern California Freeways, interfering with his access on roads near his home.

187)     Subsequent to Plaintiff's complaints and in violation of his first amendment petitioning rights Defendants have committed harmful acts on an almost daily basis, placing stimulants in his food in such a high dosage that Plaintiff began to experience, in addition to insomnia, severe chest pain and shortness of breath, and have constantly represented that these acts were done, in part, in retaliation for Plaintiff's free speech.

188)     For decades Defendants did not acknowledge their own tortious and illegal conduct or even advise Plaintiff of their presence, nor did they advise him as to the judiciary's involvement in his life.

189)     By misstating facts and failing to correct misperceptions government Defendants induced Plaintiff into taking stances against the entertainment industry that he might not have taken had he known more about the respective roles of the various Defendants;

190)     For several years Plaintiff has been investigating and analyzing the various ways in which the agents and employees of the federal government and the City and County of Los Angeles, acting in concert with private individuals, had been planning and interfering with Plaintiff's life; these Defendants did not obtain Plaintiff's consent or advise him of their plans, and manipulated Plaintiff's life in ways that were at odds with his pre-existing relationships, plans and desires.

191)   The details are legally and factually complex and Plaintiff's understanding has been modified over the course of several years and has generally improved with the accretion of new evidence, despite innumerable misrepresentations by Defendants.

192)   Initially Plaintiff's beliefs, impressions and knowledge of the actions of the various Defendants was derived from Defendants' admissions, Plaintiff's evolving understanding of Defendants' modes of communication, and Plaintiff's memories, incorporated into his understanding as they resurfaced, and from Defendants' implanted thoughts and suggestions.

193)   Approximately 6-7 years ago Plaintiff discovered a number of new sources of evidence of Defendants' wrongdoing.

194)   Over the past 6-7 years, Plaintiff has diligently and carefully extensively analyzed a fraction of this evidence, as it is complex and requires painstaking attention to detail.

195)   The evidence demonstrates the validity of a number of allegations he had made in a prior related case (01-4340, Central District of California, Judge Morrow) and grounds the assertion of a number of new claims against new Defendants.

### Continuing Violations Doctrine

196)   Plaintiff has now documented the fact that Defendants have engaged in a continuous pattern of wrongdoing spanning 40 years. There has been such a high degree of awareness of the way in which the community has controlled Plaintiff's life that it's absurd to assert that Plaintiff was victimized by discrete acts instead of by a common plan or set of common plans; Defendants have violated Plaintiff's privacy over the same period of time.

### Equitable Tolling

197)   The following circumstances warrant the application of the doctrine of equitable tolling:  1) Plaintiff's claims were unjustly delayed by fraudulent and false claims made to justify his impressment; at or near the time Plaintiff began to prepare for litigation, and Plaintiff had the impression the courts were closed to Plaintiff, at least until one or more investigations had concluded; 2) Defendants retaliated by misinforming and disinforming Plaintiff, controlled Plaintiff's consciousness, including Plaintiff's mood, word choice, and decision-making, damaged Plaintiff's health, and sought to cause Plaintiff to become involved in illegal behavior and sought to create further grounds for impressing him, and thereby hindered Plaintiff's ability to proceed; 3) Defendants deceived Plaintiff and made promises they had no intention of keeping and/or did not intend to keep in a reasonable

time;  4) Defendants assume a level of involvement in and control over Plaintiff's life not warranted by law, and continue to invade Plaintiff's privacy and interfere with Plaintiff's autonomy; 5) Over the course of 14 years, Defendants have repeatedly advised Plaintiff that they were going to compensate Plaintiff for the harm they have caused;

### Blameless Ignorance, Fraudulent Concealment, Equitable Estoppel

198)    For decades, continuing until approximately 2000 or 2001, Plaintiff was unable to obtain vital information bearing on Plaintiff's claims because Plaintiff lacked an understanding of intelligence community communication, and because the community didn't provide Plaintiff with such information, and because Defendants, using scientific techniques, conspired to influence or control Plaintiff's consciousness, mood, ideation, and beliefs, and because Defendants conspired to assault and batter Plaintiff or deliberately took steps to achieve that result,  and because Defendants engaged in a pattern of misinformation and disinformation, some of these Defendants ignoring their fiduciary obligations to provide Plaintiff with information;  Defendants simply inflicted tortious and unconstitutional harm on Plaintiff for a number of years without explanation and without Plaintiff's consent;  Defendants/the agency are responsible for creating the context in which these harms occurred and for suggesting alternate factual scenarios as to why the harms occurred.

199)    Defendants have admitted they made mistakes in their treatment of Plaintiff;

200)    Defendants advised Plaintiff that they didn't intend to answer his questions in and around 1997, and related to Plaintiff that they noticed that he didn't understand some of their communication.

201)    In retaliation for Plaintiff's petitioning Defendants began to assault Plaintiff,  by spiking Plaintiff's food on a regular basis, estimated 3-5 times a week on average, a pattern that continued for 7-8 years. Plaintiff's food was spiked with amphetamines and other stimulants, detergents, rubbing alcohol, insecticide and other unknown toxins, prescription drugs, over the counter drugs, and harmful bacteria and fungi.

202)    Defendants and their agents assaulted Plaintiff, while for many years other Defendants failed to offer Plaintiff any real protection or guidance as to how to avoid these spikings.

203)    Plaintiff has only recently (ie, within the last 6-7  years) documented the extent to which Defendants have been employing techniques of subconscious control to influence

and control his behavior, including but not limited to his word choice, decision-making, and preferences; Plaintiff now has evidence that Defendants subconsciously manipulated him into being more tractable or pliable when the need arose, and probably affected his consciousness in other ways, from 1997 until 2001 or later (when Plaintiff filed 01-4340).

204) Defendants did not at any point directly advise Plaintiff that they had subjected Plaintiff to such techniques for decades, though other Defendants did make the equivalent point in evidence Plaintiff has been deciphering over the course of the past 6-7 years

205) Plaintiff only recently reached a level of documentation and analysis sufficient to cause some federal officials to concede that Plaintiff's analysis is by and large correct, though he is certain that many government officials knew of the accuracy and validity of Plaintiff's claims many years ago.

206) Plaintiff didn't have, nor could he have had (sufficient) knowledge of the methods of communication or identities of the wrongdoers/intelligence community members to understand the effects they had on Plaintiff's life until recently.

207) Defendants advised Plaintiff that Plaintiff would receive compensation well in excess of the costs Plaintiff paid--that now appears to be impossible--and did whatever they had to do to provide Plaintiff with a false sense of optimism, by telling Plaintiff the worst was over, by manipulating Plaintiff emotionally, by making false statements to the effect that Plaintiff's life would dramatically change in the near future, often going so far as to state such dates, invariably followed by 'surprise' revelations that they had lied

208) In effect, Defendant offered a series of fraudulent inducements to mollify Plaintiff and reduce the conflict.

209) Defendants also coerced Plaintiff's participation in the community by interfering with Plaintiff's other career options and autonomy, controlling Plaintiff and seeking to make Plaintiff dependent upon them.

210) Defendant won't suffer hardship by the passage of time: Defendants have been on notice of Plaintiff's concerns and beliefs since they recruited Plaintiff, and have within the past few years quoted remarks Plaintiff made in the 80's; within the past year Plaintiff has discovered evidence that Defendants have maintained a good, possibly complete record of Plaintiff's early life, and have expressed awareness of nearly every fact Plantiff has stated about Plaintiff's youth;

211) Defendant is thus estopped from relying on statute of limitations defenses.

**Accrual Theories**

212) Plaintiff has, through the course of this analysis, discovered past tortious and otherwise illegal behavior and asserts the discovery rule where appropriate, particularly when circumstances were beyond the control of Plaintiff; Plaintiff has also suffered new harm in the form of emotional distress arising from his realization of/documentation of each instance of Defendants' past wrongdoing; alternatively Plaintiff suffered harm that accrued when Defendants failed to take action within a reasonable time to provide him with an acceptable form of compensation for the harm all Defendants caused or were instrumental in creating; Defendants responded to Plaintiff's petitioning efforts by making fraudulent representations to Plaintiff and to the judiciary, and by taking steps to harm him physically and destroy his chances for imminent economic success; and Plaintiff relies on all applicable equitable doctrines in adding claims that would ordinarily be outside the limitations period.

213) Plaintiff has discovered evidence or learned of Defendants' schemes in a variety of ways over a long period of time; the complaint is accordingly arranged at times according to the wrongs of certain Defendants, at times according to particular schemes apparently involving many Defendants, and at times according to particular legal claims.

**FIRST CLAIM FOR RELIEF**

**1st Amendment Retaliation; Battery/Civil Conspiracy; Gross Negligence; Article I Sections 1, 2, 7, California Constitution**

**Title 42 Chapter 21 Subchapter 21 Section 1983 (Civil Action for Deprivation of Rights)**

214) Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

215) On dozens of occasions, unnamed federal law enforcement agents and members of the Los Angeles Police Department, acting under color of law, followed a common plan to use Plaintiff in sting operations without right or justification, and without Plaintiff's knowledge or consent, and in coercive economic circumstances they had a hand in creating, and thereby caused Plaintiff harm; Defendants had the same duty to Plaintiff that they have to those in the general population, i.e. not to significantly increase the risk of harm to such individuals without their knowledge and consent.

-33-

216)     Defendants took these actions without right and/or to retaliate against Plaintiff for his lawful exercise of his petitioning rights.

217)     Defendants acted intentionally and without right or desired to harm Plaintiff and/or were substantially certain their behavior would cause harm to Plaintiff and thereby harmed Plaintiff; alternatively Defendants acted recklessly or with gross negligence in failing to perform their duties, and thereby caused physical, emotional, and economic harm to Plaintiff.

## SECOND CLAIM FOR RELIEF

**1st Amendment Retaliation; Battery/Civil Conspiracy; Gross Negligence; Article I Sections 1, 2, 7, California Constitution; Title 42 Chapter 21 Subchapter 21 Section 1983**

218)     Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

219)     On dozens of occasions, unnamed federal law enforcement agents and members of the Los Angeles Police Department, acting under color of law, fraudulently obtained judicial or governmental authorization or acted intentionally and without right or justification to contaminate or in other ways make harmful and offensive contact to Plaintiff by tampering with food and/or beverages sold to Plaintiff, causing Plaintiff to suffer physical, emotional, and economic harm; alternatively, these Defendants acted alone and without Plaintiff's consent, and in coercive economic circumstances they had a hand in creating, to make this harmful and offensive contact.

220)     Defendants took these actions without right and/or to retaliate against Plaintiff for Plaintiff's lawful exercise of Plaintiff's petitioning rights.

221)     Defendants acted intentionally and without right and thereby harmed Plaintiff; alternatively Defendants acted recklessly or with gross negligence in failing to perform their duties, and thereby caused physical, emotional, and economic harm to Plaintiff.

## THIRD CLAIM FOR RELIEF

**Intentional Infliction of Emotional Distress/First Amendment Retaliation/Interference with Intimate Relations; Civil Conspiracy; Sections 4, 5, 6, 8, Article 2, Arizona Constitution, Sections 2, 8, 16 Article 1 of the Minnesota Constitution, Article I Sections 1, 2, 7 ; California Constitution**

222)     Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

223)  Community Defendants interfered with Plaintiff's first engagement, in Arizona in 1979 or 1980, in accord with evidence Plaintiff has discovered within the past 5-6 years;

224)  Plaintiff now has documentation to prove that Defendants planned the course of that relationship, that they used scientific techniques to modify and control Plaintiff's behavior during that time, and otherwise took illegal steps to control the course of the relationship;

225)  Plaintiff's second serious relationship lasted for approximately 3 years, in Arizona, in the early 80s; Community Defendants interfered with this relationship by actively taking steps to influence Plaintiff's opportunities and decisions and by forming plans for the relationship's demise, and by invading Plaintiff's privacy;

226)  In retaliation for Plaintiff's petitioning and/or in a continuing attempt to control the course of Plaintiff's emotional life, Defendants wrongfully interfered with Plaintiff's dating, relationship and marriage opportunities from 2000-2010.

227)  Defendants shared a common plan to cause Plaintiff distress and by their actions caused severe emotional, physical, and economic harm to Plaintiff.

## FOURTH CLAIM FOR RELIEF

### Invasion of Privacy/Public Disclosure of Private Facts/
### Breach of Fiduciary Duty/Civil Conspiracy; 5th & 14th Amendment Due Process and
### Equal Protection; Article 1, Article 7, California Constitution,
### Article 1, Sections 2, 7, 8 Minnesota Constitution

228)  Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

229)  Plaintiff has heard dozens of allegations over the past 9-10 years by individuals inquiring into Plaintiff's past and/or by individuals responsible for advising Plaintiff of grounds the government asserted for impressing him; those individuals with an obligation to advise Plaintiff did little or nothing to distinguish their authorized and important legal representations from the gossip of others; causing Plaintiff to doubt their validity, Defendants did not distinguish actual points of contention from allegations made by those fishing for information.

230)  Plaintiff complained about this lack of clarity and forthrightness on dozens of occasions over the course of several years, and in many cases declined to address potential issues—which may have been tantamount to declining to offer proof of innocence in a

contested matter—to avoid detrimental discussions of his past with individuals who may have been intent on smearing Plaintiff, and to avoid political persecution.

231)    As a result of Defendants' negligence, Plaintiff lost the opportunity to actively search for evidence related to genuine issues or organize data in a way that would permit ready access to exculpatory evidence.

232)    Nevertheless, Plaintiff does not believe that there are any claims of wrongdoing for which he lacks a tremendous amount of general proof of related entrapping and outrageous government conduct, and specific proof of plans to entrap Plaintiff in specific ways, and specific proof of government's illegal use of scientific techniques, and drugs, and chemicals to control or influence Plaintiff's behavior.

233)    There exists a one to one correspondence for every allegation Plaintiff has heard, and evidence of a prior plan of specific entrapping/outrageous behavior, sufficient to demonstrate that federal agents also took steps to control Plaintiff's consciousness and modify Plaintiff's decision-making in ways that would obviously negate the mens rea element of any alleged offense, amount to entrapment and/or outrageous governmental conduct, and demonstrate that Defendants, and not Plaintiff, are the legal causes of any such actions.

234)    Plaintiff is also certain that some Defendants with an obligation to come forward and produce exculpatory evidence did not do so, in order to further state and federal law enforcement schemes.

235)    As a result of the aforementioned breach of fiduciary obligations, and as a result of the gross negligence or negligence of individuals who owed a duty to Plaintiff to produce exculpatory evidence in a timely manner, Plaintiff has been suffered physical harm, emotional distress, tremendous economic loss, and a loss of years of life.

236)    As a result of their illegal control of Plaintiff's life and consciousness, Intelligence community Defendants and Defendant Inspectors and Law Enforcement Defendants and Plaintiff had a special relationship, part of which required Defendants to act as a promoter or perhaps manager helping Plaintiff develop a career in the entertainment industry.

237)    Defendants initiated this relationship with Plaintiff on fraudulent and coercive terms, failed to provide Plaintiff with counsel as to how best to facilitate Plaintiff's career in a manner consonant with Plaintiff's values and beliefs, and sabotaged Plaintiff's career, and

causing Plaintiff physical, mental, emotional, and financial hardship, and continued to act as though the relationship persisted in an attempt to keep Plaintiff's claims out of court.

238)   Defendant had an obligation to explain to Plaintiff how Defendant intended to achieve his career goals, give Plaintiff sound advice, and with Plaintiff's advance notice and consent display Plaintiff's talents in a way that comported with Plaintiff's career goals and natural sensibilities, which Defendants had an obligation to discern.

239)   Defendant had an obligation to take reasonable steps to protect the interests of Plaintiff and Defendant.  Defendant also released or recklessly permitted the release of personal and confidential information about Plaintiff's life to the general public and to individuals in the federal government, and thereby caused Plaintiff emotional and financial harm;

240)   In knowingly releasing and/or recklessly allowing the plundering of Plaintiff's creative works, and by releasing and/or recklessly allowing the release of harmful information about Plaintiff, Defendant had a fiduciary obligation to Plaintiff, breached this duty, and thereby caused harm to Plaintiff.

## FIFTH CLAIM FOR RELIEF

### 5th, 14th Amendments (Due Process)/4th Amendment (Privacy)

### 1st Amendment (Interference with Petitioning Rights)

241)   Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.  By tampering with his computers and spiking his food and making unauthorized and unwarranted entry into his home Government Defendants have interfered with Plaintiff's preparation of legal materials for several years, without Plaintiff's consent and/or over Plaintiff's objections, in violation of Plaintiff's 4th amendment privacy rights, 5th amendment due process rights, and 1st amendment petitioning rights.

242)   Defendants followed a common plan or set of common plans to interfere with Plaintiff's due process and petitioning rights, and thereby caused severe emotional, physical, and economic harm to Plaintiff.

## SIXTH CLAIM FOR RELIEF

### 5th Amendment; 14th Amendment (Due Process) Civil Conspiracy;

### Article 1, Section 8, Minnesota Constitution

243) Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

244) Under California and Arizona law, and, arguably, under Minnesota law and the US Constitution, Plaintiff had accrued causes of action that became vested rights at the moment these Defendants harmed him.

245) Under all four constitutions, Plaintiff's rights vested when favorable legal determinations were made on his behalf and Defendants had an obligation to compensate him accordingly;

246) Alternatively, Defendants breached their fiduciary obligations to Plaintiff by failing to take appropriate steps to secure judgments on his behalf and/or by failing to compensate Plaintiff.

247) Plaintiff is and has been entitled to any and all benefits connected to these rights from the moment the rights vested, and all Defendants have continuously and willfully ignored his rights.

248) Defendants also interfered with Plaintiff's vested rights by taking steps to fully and fairly litigate the claims Plaintiff made in 01-4340, advising him incorrectly as to the status of the case and interfering with his information gathering;

249) Plaintiff has or had valid claims in that case, vested legal claims worth a great deal of money; while the matter is on appeal, Defendants have nevertheless, by virtue of their wrongful behavior delayed the course of justice and have thereby injured Plaintiff;

### SEVENTH CLAIM FOR RELIEF

**Intentional Infliction of Emotional Distress/ Battery/Nuisance/Breach of Fiduciary Duty/Civil Conspiracy; 5th, 14th Amendment Due Process; First Amendment, Petitioning and Retaliation**

250) Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs. Over the past 9 years Defendants interfered with Plaintiff's comprehension by pretending to speak on behalf of the court and/or intentionally misrepresenting material facts to Plaintiff, which prevented Plaintiff from knowing when he was or wasn't the recipient of official court communications, causing harm to Plaintiff. Defendants also intentionally interfered with Plaintiff's petitioning by using subconscious behavioral control techniques, nuisance tactics, and harmful physical contact to affect the quality of Plaintiff's legal presentations.

251) Defendants intentionally created ambiguities and vagaries that interfered with his understanding, his ability to enter into dating relationships, and his ability to identify and take legal action against those harming him.

252) Defendants followed a common plan or set of common plans to interfere with Plaintiff's due process and petitioning rights and thereby caused severe emotional, physical, and economic harm to Plaintiff.

253) Some of these Defendants had fiduciary obligations to Plaintiff, and retaliated for his petitioning by sabotaging his career and economic opportunities.

254) The following examples--incidents from October 7 2009 to July 2010-- occurred in Minnesota. Defendants in the US law enforcement community and/or US intelligence community described many of these attacks as costs Plaintiff would have to bear for dates and opportunities in the entertainment industry; Plaintiff has repeatedly, publicly stated that Plaintiff did not consent to such costs, and would not accept offers coming with such costs; Defendants have long been aware of Plaintiff's remarks and conditions and attacked Plaintiff on a foolish pretext.

255) On July 13 2010 Plaintiff was attacked for at least one hour continuously by energy weaponry, shot in the head, and exposed to a toxic mist or chemicals or gas, causing an elevated heart rate.

256) On July 12 2010 Plaintiff was attacked with energy weaponry, shot in the eyes on two occasions, and exposed to a toxic mist that caused Plaintiff to experience an elevated heart rate; Plaintiff's cat was also attacked, and threw up twice.

257) On July 11 2010 Plaintiff was shot in the head and face with microwaves or other energy weaponry over the course of several hours, and gassed;

258) On July 10 2010 Plaintiff and Plaintiff's cats were gassed, causing one of the cats to vomit;

259) On July 9 2010 Defendants caused Plaintiff to develop darkened and puffy eyes, apparently by the use of energy weaponry;

260) On June 6 Plaintiff was gassed and attacked by energy weaponry;

261) On the evening of July 5 2010 Plaintiff was attacked by energy weapons continuously, while engaged in factual research for this case; during this time Plaintiff was presented with a retaliatory message pertaining to teaching Plaintiff a lesson in manners;

262)   On July 5 2010, after receiving notice that the harm to Plaintiff, by reports under pretext or color of right,  had ceased; Plaintiff resumed drafting the complaint and was again immediately attacked by energy weapons: Defendants thereby utterly ignored the statutory and inherent right of the courts to control matters within its realm;

263)   On July 5 2010 Plaintiff was shot in and around Plaintiff's left eye with some form of energy while preparing this complaint, an attack that is in fact occurring as Plaintiff writes;

264)   On July 5 Plaintiff was attacked by gas and energy—by one report radiation-- the gas causing one of Plaintiff's cats to vomit; Plaintiff has already produced several pieces of evidence documenting a plan to cause such harm dating back weeks, and the attacks cannot reasonably be viewed as a legitimate government response to any recent activity;

265)   On July 3-July 5 2010 Plaintiff was attacked by Defendants using energy weaponry; after several hours Plaintiff's brain became bruised and hypersensitive to pain though the attacks continued for at least 48  hours, and occurred in part while Plaintiff drafting this petition and researching this case,.

266)   On July 2 2010 Plaintiff was shot in the head for several hours by energy weaponry, while researching this case, near in time to a statement that the Department of Homeland Security was acting aggressively.

267)   From October 10 2009 to July 2 2010 Plaintiff's cats were attacked by gas and microwaves on at least 50 occasions, causing them to vomit or cry; Plaintiff has also noticed a perfect or virtually perfect correlation between Plaintiff's use of Plaintiff's massage chair, designed to prevent spinal injury, and Plaintiff's cats vomiting from attacks.

268)   On July 1 2010 Defendants shot energy weaponry at Plaintiff's eyes, causing them to puff up.

269)   On July 1 2010 Plaintiff was gassed and awakened by  noise designed specifically to wake Plaintff and send a retaliatory message.  On June 30 2010 Plaintiff was hit with energy weaponry repeatedly while drafting this complaint, perhaps as intended to impose costs upon Plaintiff without right, without Plaintiff's consent, and in circumstances where Plaintiff is, and has been, trapped, without funds to move.

270)   In May or June 2010 Defendants killed another rabbit and left it in Plaintiff's path,  in front of a church where Plaintiff bikes, apparently a comment on Plaintiff's references to Church Committee hearings, and Plaintiff's demonstration that the intelligence community

entrapped and framed Plaintiff, related argument that the community did so with an intention to remove or reduce legislative scrutiny.

271)  On and before May 12, 2010 Plaintiff was shot in the eyes with energy weaponry and microwaved repeatedly and complained to legislators accordingly.

272)  On or near April 5 2010 Plaintiff was shot in the left eye, causing his eye to puff up; a community member advised Plaintiff that the community 'can' harm Plaintiff and suggested they'd gotten judicial authorization for the attack. Defendants did not specify the ground for the attack. Plaintiff complained to legislators accordingly.

273)  On or near February 19 2010 Plaintiff wrote to the Bloomington City Attorney complaining that Plaintiff had been gassed, and accurately noted in a letter to legislators that Plaintiff had less than $200 dollars, and therefore was essentially trapped economically.

274)  On or about January 15 2010 Plaintiff was shot in the head with radiation much of the night last night, probably relating to a 'pummeling' key. the only explanation Plaintiff heard, related to Plaintiff's accurate remark that Plaintiff wasn't always responsible for Plaintiff's word choice, that Defendants were suggesting words subconsciously.  .

275)  On or near Feburay 6 2010 Plaintiff was shot hard in the head with energy weapons and gassed.

276)  Nearly every day for several months, on a daily basis, Defendants drove past Plaintiff and fired energy weaponry at Plaintiff's head and chest

277)  On November 27 2009 Plaintiff was  shot in the kidneys, apparent retaliation for stating that Plaintiff was intentionally hospitalized several years ago, on a few occasions, with kidney stones/kidney pain.

278)  On or about November 10 2009 Plaintiff was shot in the head for several hours while working a job that paid close to minimum wage; Plaintiff protested publicly and to legislators and believes these complaints caused Plaintiff to be terminated.

279)  On or about October 2 and October 3 2009 Plaintiff was microwaved hard in the head on two occasions, and a mechanic, apparently at the behest of either the intelligence community or the entertainment industry, welded Plaintiff's oil pan bolt to the oil pan to prevent Plaintiff from getting an oil change, just before Plaintiff was due to drive cross-country, back to Minneapolis.

280)  On or about October 5 2010 Defendants sabotaged Plaintiff's vehicle, causing Plaintiff to drive several  hundred miles in a full van with one of the tires bulging

dangerously.    Plaintiff knows the vehicle was sabotaged because Plaintiff was forewarned, but did not understand the warning until later.

281)  In early August 2009 Plaintiff received a notice requiring Plaintiff to submit a modified legal document within 20 days, in District Court case 08-5515.  Over the next 3-4 days Plaintiff received an eviction notice, had food spiked with mold and stimulants, and drank spiked water.

282)  On August 26 2009 Plaintiff was awakened after approximately 90 minutes of sleep with gas or amyl, a form of interference with Plaintiff's sleep that has now been repeated dozens of times.

283)  On or about June 16 2009 Plaintiff was gassed or irradiated or shot with energy, causing Plaintiff to experience moderate to severe chest pain, and sought criminal charges against those responsible.

284)  On or about May 18 2009 Plaintiff wrote to Senators complaining, accurately, of gas in Plaintiff's apartment.

285)  On or about April 20 2009 Plaintiff complained to legislators, accurately, of an assault, apparently by gas or chemicals, that caused Plaintiff to have an elevated heart rate, and of being awakened on several occasions by individuals who were evidently aware of Plaintiff's attempts to sleep; over a several year period Plaintiff's sleep was disrupted by gas and energy weapons daily or virtually daily, interfering with Plaintiff's concentration, health, ability to seek employment, and petitioning.

286)   On or about February 15 2009 Plaintiff was gassed; on or near February 15 Plaintiff was microwaved while biking and while in his dwelling.

287)   On March 8 2009 Plaintiff complained to legislators, accurately, of loud thumping music being played while Plaintiff was trying to draft legal documents, of the theft of Plaintiff's bicycle, and of one or more stimulant spikes that interfered with Plaintiff's productivity and health for 2-3 days.

288)   On or about February 20 2009 Plaintiff complained to legislators, accurately, that Plaintiff was being struck in the kidneys and heart by microwave weaponry, and also noted apparent tampering with petitions saved on Plaintiff's computer.

289)   On January 27 2009 Plaintiff was called out on a fraudulent work offer—no one home at the work site—and was microwaved en route to the site.

290)  On January 15 2009 Plaintiff wrote to legislators complaining accurately of an elevated heart rate from gas or a toothbrush spiked, noting that Plaintiff had conditioned any employment agreement on the absence of various sorts of harm or loss of rights.

291)   On or about November 27 2008 Plaintiff wrote to legislators complaining, accurately, of energy weapons fired at Plaintiff's cat over the course of several minutes, causing the cat to cry out.  At that time Plaintiff also noted a correlation between words and phrases in documents and words and phrases Plaintiff had recently used, leading Plaintiff to conclude that Defendants had been suggesting words and/or ideas to Plaintiff at a subconscious level.

292)  Plaintiff has in fact noticed, and documented, hundreds of such instances of unauthorized interference with Plaintiff's consciousness, most of these close in time to the time the analysis was performed, though Plaintiff also recalled conversations and word choices Plaintiff had made in writings and conversations over the course of decades, and has been able to document the same sort of interference over the course of decades.

293)  On or about November 24 2008 Plaintiff was microwaved in the stomach; on or near that date Plaintiff informed legislators that Plaintiff did not accept harm as insurance against prosecurtion, as all of the subject acts were planned and caused by government and co-conspirators; Plaintiff also wrote the Los Angeles District Attorney on this date requesting prosecution of those responsible.

294)  On November 13 2008 Plaintiff suffered pain and chest tightness from energy or a chemical spray.

295)  On November 10 or 11 2008 Plaintiff became sick after eating, apparently anti-freeze, though the food was also spiked with heavy metal.  Plaintiff's food has been spiked with heavy metals designed to interfere with coginition on countless occasions.  Plaintiff was also microwaved while eating, in and around this time.

296)  On September 17 2009 Plaintiff complained to legislators, accurately, that Plaintiff was trembling from some sort of attack while trying to draft a legal motion.

297)  On August 19 2008 Plaintiff complained to legislators, accurately, of constant microwaving over a 48 hour period.

298)  Over the span of several months Defendants re-enacted tortious conduct cited in Plaintiff' first amended complaint in 08-5155, on several occasions;

## EIGHTH CLAIM FOR RELIEF

-43-

**1st Amendment (Retaliatory Interference with Speech and Petitioning); 5th, 14th Amendment, Equal Protection, Title 42 Chapter 21 Subchapter 21 Section 1983 (Civil Action for Deprivation of Rights/Breach of Fiduciary Duty/Trespass/ Intentional Infliction of Emotional Distress/Battery/Civil Conspiracy**

299)  Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

300)  Defendants threatened to play 'hardball' with Plaintiff in retaliation for his exercise of his constitutional petitioning rights, and have routinely expressed glee at hardships that have befallen Plaintiff over the past several years as a result of the illegal acts of other Defendants

301)  On numerous occasions from 2000 to 2010 Government Defendants, acting under color of law, intentionally and without right or justification gained access to and/or engaged in the regular monitoring of Plaintiff in Plaintiff's dwelling, and made information from that monitoring available to others, illegally and in retaliation for Plaintiff's lawful exercise of his speech and petitioning rights.

302)  Government Defendants, acting intentionally and without right or justification and beyond consent wrongfully contaminated Plaintiff's food and/or oral hygiene products, and caused other harmful and offensive contact, illegally and in retaliation for Plaintiff's lawful exercise of his speech and petitioning rights.

303)  Defendant Inspectors and Federal Law Enforcement Defendants intentionally and without right or justification and beyond consent made unlawful entry into Plaintiff's dwelling and contaminated his food and/or oral hygiene products, Defendants' actions caused Plaintiff to suffer extreme distress, physical harm, and economic harm.

304)  Defendants also interfered with Plaintiff's comprehension of ajudicative processes by pretending to speak on behalf of decision-makers and/or intentionally misrepresenting material facts to Plaintiff, and by failing to accurately relay information.

305)  In an effort to interfere with Plaintiff's petitioning, Defendants used subconscious behavioral control techniques, nuisance tactics, and desired or were substantially certain their actions would cause harm to Plaintiff.

306)  Defendants interfered with Plaintiff's Due Process rights by failing to advise him of genuine issues in court proceedings.

307)  Defendants followed a common plan or set of common plans to interfere with Plaintiff's life in a variety of ways, and thereby caused severe emotional, physical, and economic harm to Plaintiff.

## NINTH CLAIM FOR RELIEF

### 5TH, 14TH Amendments, Equal Protection; 1983/Deprivation of Rights

308)  Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

309)  In response to Plaintiff's petitioning and believing that Plaintiff was responsible for stinging government agents and law enforcement officers, acting under color of law Los Angeles and federal Defendants singled Plaintiff out for unfair and unequal treatment, and sought to place Plaintiff in legal jeopardy any way they could, proceeded against Plaintiff without probable cause, and failed to follow normal procedures to protect Plaintiff, and applied a different standard for prosecuting and/or fining Plaintiff than they applied to the general population, and intentionally exposed Plaintiff to additional hardship and harm, and thereby caused Plaintiff to suffer unfair harm and economic damage.

310)  Government Defendants acted intentionally, wrongfully, and with ulterior motives, including but not limited to the motivation to interfere with Plaintiff's petitioning and retaliate against Plaintiff for their perception that he was responsible for their legally authorized punishment.

311)  Defendants wrongfully used the legal process, threatened Plaintiff improperly, and thereby caused Plaintiff to suffer severe emotional, physical, and economic harm; Plaintiff was  singled out for tickets, typically without explanation as to whether the tickets related to federal or local law, and harmed without notice or a hearing;

312)  Federal law enforcement defendants and Defendant inspectors  wrongfully participated in a scheme of harm/sanctions/punishment, in part by failing to disclose and/or obtain accurate information to federal and state individuals acting in adjudicative roles, in violation of Plaintiff's right of Due Process under the 5th Amendment.

313)  Federal law enforcement defendants and Defendant inspectors had a duty to properly advise Plaintiff as to reason he was being harmed.

314)  By intimating that they were joking and by providing alternate rationales for their conduct and for harm to Plaintiff, federal law enforcement defendants and Defendant inspectors failed to clearly inform Plaintiff of the nature and cause of accusations against

him, and also failed to advise Plaintiff of the nature and cause of accusations against him in a timely manner, in violation of Plaintiff's rights under the 6th Amendment.

315)   On a number of occasions, acting with malice Defendants commenced or caused the commencement of legal proceedings without probable cause and in bad faith, proceedings which were terminated in Plaintiff's favor; Defendants' actions caused Plaintiff to suffer physical, emotional, and economic harm.

316)   Plaintiff has obtained evidence, within the past 4 years, that Defendants took/stole or killed Plaintiff's two of Plaintiff's cats in the 80s and made well-publicized joking references to their conduct.

317)   In 2007 Plaintiff was in the care of two rabbits for several months and bonded with the rabbits as he would with any other pets;

318)   Defendants killed two rabbits in Plaintiff's care, or used the animals in dangerous sting operations without Plaintiff's consent, and thereby caused Plaintiff emotional distress.

319)   In retaliation for Plaintiff's petitioning Defendants followed a common plan or set of common plans to increase risks to Plaintiff and his pets, and to interfere with Plaintiff's life in a variety of ways, and thereby caused severe emotional, physical, and economic harm to Plaintiff.

## TENTH CLAIM FOR RELIEF

**1st Amendment Speech, Conscience, Intimate Relations; 4th Amendment Privacy, 9th Amendment, Intentional Infliction of Emotional Distress; Article 2, Section 1, Arizona Constitution, Article 1, Section 16, Minnesota Constitution, Article 1, Sections 1, 2 California Constitution Battery**

320)   Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

321)   Using scientific techniques illicitly, including non-consensual hypnosis, subliminals, drugs, hormones, and various sorts of suggestion and pressure, Government has wrongfully interfered with my cognition and my consciousness and manipulated my thought processes for their own purposes, for most of my life;

322)   Defendants have at all times or virtually all times been in control of Plaintiff's housing options; Defendants have exposed Plaintiff to behavioral control techniques, including control of subconscious and subliminal data;

323) Defendants have generally illicitly controlled or limited the sorts of topics that come to mind, among the most fundamental aspects of consciousness; by controlling what Plaintiff thought Defendants interfered with my natual development and artificially created a consciousness they could use in government operations; over the course of my entire life, Defendants interfered with and manipulated, inter alia, my romantic and sexual desires, my mood, my world view, my motivation, my optimism, my appetite, my interest in various subjects--dating back 40 years, my speech and my ability to recall words, including tampering with my willingness to speak, creative imagination, level of aggression, day to day decision-making, and my ability to process language.

324) During this time Plaintiff has documented hundreds of instances of interference with Plaintiff's cognition over the course of more than 7 years, including but not limited to subconscious suggestion and/or direction affecting Plaintiff's ideation, mood, decisionmaking, and desires;

325) Defendants have also harmed Plaintiff by inducing Plaintiff to make detrimental word choices, and thereby interfered with Plaintiff's image, social and political association, and conscience, speech, petitioning and association rights; Views Plaintiff does not have or would only state privately were aired publicly and indiscriminately, and views I don't have and words I wouldn't have used were implanted. Government interfered with my consciousness and circumstances to interfere with my ability and desire to pursue an academic career, including my ability to perform academically or think, and my emotional life, including my mood and anxiety level.

326) In similar ways Plaintiff's dating life—including every one of Plaintiff's significant dating or romantic relationships--was controlled or unacceptably influenced, including two engagements. Plaintiff's family relationships suffered as a result of the wrongful acts of interference by Government.

327) Defendants thereby damaged Plaintiff's longstanding personal relationships, in violation of Plaintiff's first amendment rights of conscience, petitioning, retaliation, and association;

## ELEVENTH CLAIM FOR RELIEF

### Involuntary Servitude/13th Amendment/Fourth Amendment (Privacy)

328) Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs. As a result of the harm to Plaintiff's reputation, the assaults to Plaintiff, and

-47-

other unjustifiable and wrongful interference by Government Defendants Plaintiff has been unable to find work away from Defendants for a number of years and was at times forced, at other times fraudulently induced, and at other times tricked into working to further various agendas of Government Defendants.

329)  Plaintiff has never earned as much in these circumstances as Plaintiff could have earned in a market that was not subject to Defendants' tampering, whether that income came from practicing law or marketing creative works, with far fewer, far less severe ancillary costs.

330)  Defendants have manipulated the market and controlled Plaintiff's circumstances to ensure that Plaintiff only receive work offers that make Plaintiff and Plaintiff's vehicle vulnerable to various sorts of attacks, including, e.g., shooting energy weaponry at Plaintiff's eyes, face, and head while Plaintiff drives to far away jobs, attempting to modify Plaintiff's consciousness using subliminal and hypnotic techniques in the same instances.

331)  Plaintiff has solicited federal officials for work or work leads on numerous occasions, including several letters in 2009 and 2010, including, e.g., a letter sent on March 2 2010 Plaintiff noting, accurately, that Plaintiff had been spending an hour a day, sometimes much more, looking for work.

332)  Defendants compounded their error, and the magnitude of the involuntary servitude, by going beyond the ordinary requirements of the work Plaintiff was performing, requiring that he be subjected to constant interference, everywhere he went, in violation of Plaintiff's reasonable expectation of privacy.

333)  The wholesale deprivation of Plaintiff's privacy outside of his home constitutes a deprivation of his right to be secure in his person, as well as his right to be secure in his home, rights granted by the plain language of the Fourth Amendment.

334)  As a result of Defendants' actions, Plaintiff has suffered severe emotional, physical, and economic harm

## TWELFTH CLAIM FOR RELIEF

**4th Amendment (Searches/Seizures); 5th Amendment (Takings)/Title 42 Chapter 21 Subchapter 21 Section 1983 (Civil Action for Deprivation of Rights); 17 USC 101 et seq., RICO (copyright); Lanham Act; California B&P Sections 17200, 17500 (Unfair Competition)**

335)   Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

336)   Plaintiff applied for a copyright of a volume of writings entitled 'Tribute Anthology 2007' in 2007, and the work was registered in 2008.

337)   Dozens of lines from Plaintiff's essays and titles from his poems appear in the titles of Hollywood films and films made elsewhere around the world;

338)   Plaintiff has seen hundreds of instances of the unauthorized use of his copyrighted writings and the use of his creative expressions in films and on television;

339)   Engaging in unreasonable searches and seizures and/or going beyond the scope of reasonable and warranted government behavior, Government Defendants intentionally disseminated and infringed upon Plaintiff's copyrighted work, and other creative and scholarly compositions, and deprived Plaintiff of the ability to profit from the fruits of his intellectual labor.

340)   Defendants took these writings for both private and/or public use without compensating Plaintiff.

341)   Defendants also made public disclosure of numerous aspects of Plaintiff's private life in violation of his Fourth Amendment privacy rights.

342)   Defendants were also responsible for the creation of policies under which unconstitutional practices occurred and/or exhibited gross negligence in managing subordinates who caused these violations.

343)   Defendants followed a common plan or set of common plans to interfere with Plaintiff's due process and petitioning and thereby caused severe emotional, physical, and economic harm to Plaintiff.

344)   Defendants used the proceeds of their illegal enterprise in the creation of films and television shows and are engaged in interstate commerce; and the sheer number of instances of infringement and use of Plaintiff's expressions demonstrates that Plaintiff's intellectual property was widely disseminated without Plaintiff's consent;

345)   Defendants' acts are 'related' and 'continuous' in that Defendants followed a common plan to interfere with Plaintiff's economic opportunities, deprive Plaintiff of compensation in accord with Plaintiff's vested rights, find pretextual ways to access and use Plaintiff's creativity and intellectual property without Plaintiff's consent, and have been acting in accord with that plan for more than a decade.

346)  Plaintiff hereby asserts a claim against Defendants for injunctive and monetary relief pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), with regards to the false designation of origin and false descriptions and representations in commerce of Defendants.

347)  For these actions Plaintiff also hereby asserts a claim against Defendants for unfair competition under California Business and Professions Code 17200 and 17500.

### THIRTEENTH CLAIM FOR RELIEF

**Racketeer Influenced and Corrupt Organizations Act (RICO)**

**18 USC § 1961 et seq.; First Amendment Retaliation**

348)  Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

349)  Over the course of many years, Defendants conducted a criminal enterprise in an effort, inter alia, to plunder Plaintiff's creativity and infringe upon and/or destroy the value of Plaintiff's creative and intellectual labor, and a second enterprise to retaliate against Plaintiff when Plaintiff complained of Defendants' illegal behavior

350)  Over the course of many years, on many many occasions, Defendants sought to impress Plaintiff and/or advise Plaintiff he had been impressed in order to justify their presence in his home and their taking of his copyrighted and creative labor;

351)  Defendants took Plaintiffs intellectual property without Plaintiff's consent and/or on a pretextual or fraudulently asserted claim of right, and took the above-described illegal steps to ensure Plaintiff was without real options and that they would continue to have access to Plaintiff's writings and creative output, and gave or sold them to individuals in the entertainment industry;

352)  Defendants interfered with Plaintiff's efforts to find alternate work and on some occasions made deceptive statements designed to provide Defendants with a pretext for taking his intellectual property, while ostensibly relating to work discussion.

353)  Defendants used the proceeds of their illegal enterprise in the creation of films and television shows and are engaged in interstate commerce; and the sheer number of instances of infringement and use of Plaintiff's expressions demonstrates that his intellectual property was widely disseminated without Plaintiff's consent;

354)  Defendants' acts are 'related' and 'continuous' in that Defendants followed a common plan to interfere with Plaintiff's economic opportunities, deprive him of compensation in accord with his vested rights, find pretextual ways to access and use

Plaintiff's creativity and intellectual property without Plaintiff's consent, and have been acting in accord with that plan for more than a decade.

355)  Defendants actively concealed information relating to their past manipulation of Plaintiff's circumstances from decision-makers and thereby gained unjustified access to Plaintiff's creativity and intellectual property.

356)  Defendants caused economic harm to Plaintiff by the unauthorized and uncompensated distribution and use of his writings and creativity and intellectual property, destroying or decreasing the value of Plaintiff's originality; Plaintiff's word choices, choices of imagery, and humor has been taken and illicitly used by Defendants in film and on television even though Plaintiff has not yet marketed his work.

## FOURTEENTH CLAIM FOR RELIEF

**Racketeer Influenced and Corrupt Organizations Act (RICO) 18 USC § 1961 et seq. First Amendment Retaliation (Obstruction of Justice, Retaliation, Threatening and Harming Witness, Copyright); Conversion, Intentional Infliction of Emotional Distress**

357)  Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

358)  Plaintiff began to petition government in 2000 after coming to believe individuals in the intelligence community and the federal government were engaged in illegal activity.

359)  Over the course of many years, in retaliation for Plaintiff's petitioning efforts, Defendants conducted a criminal enterprise in an effort to, inter alia, harass, intimidate, and threaten Plaintiff and interfere with his ability to produce evidence of their illegal behavior.

360)  Defendants have over the course of many years harmed Plaintiff without right on hundreds of occasions, have done the following or taken retaliatory steps to make the following harms inevitable or all but inevitable:  Plaintiff has:  been viciously assaulted on a number of occasions, had his vehicle brakes cut or damaged on more than one occasion, witnessed many dead animals specifically placed in his path on more than a dozen occasions, been exposed to harmful gases and sprays on many occasions, been ill as a result of illegal exposure to fungi and harmful bacteria or viruses, eaten food spiked with poisonous chemicals, detergents, drugs, stimulants, and hormones & steroids and other behavior-modifying drugs and substances, and has otherwise been physically assaulted on hundreds or thousands of occasions.

361)  Plaintiff's cats have been similarly attacked and harmed, and rabbits in his care were killed in connection with many, many retaliatory messages; Defendants made false and unprivileged statements about Plaintiff, including but not limited to statements about his character, his disposition, his abilities and his private life, causing Plaintiff to be embarrassed; remarks which had and continue to have a tendency to injure Plaintiff's occupation and career goals.

362)  Defendants took all of Plaintiff's personal property from Plaintiff's storage facility in San Francisco in January, 1995, causing a departure from the storage facility's ordinary rule wherein they saved personal property in the event of payment disputes.

363)  Defendants took or caused the loss of Plaintiff's master's thesis, his intellectual property, his creative writings, and nearly all mementos of his childhood, and evidence related to this litigation; Plaintiff's writings would have been added to the anthology he copyrighted in 2007; Defendant acted outrageously and intentionally converted Plaintiff's property by a wrongful act or disposition of property rights, and thereby caused economic harm and severe emotional distress to Plaintiff.

364)  Defendants also took or caused the loss of data on two of Plaintiff's computers within the past 8-9 years, losses which Plaintiff discovered within the last year when he attempted to reboot old, previously functioning computers and found that he could not;

365)  These computers creative writing were did not, as a result of their inaccessibility, added to Plaintiff's 2007 Anthology, contained information as to the dates of creation of other writings of Plaintiff, and contained evidence of Defendants' misconduct;

366)  Defendants followed a common plan or set of common plans to destroy evidence and convert Plaintiff's property and thereby caused severe emotional, physical, and economic harm to Plaintiff; Plaintiff has within the past 5-6 years documented that his writings were evidence of past behavioral control efforts, and has within the past few weeks confirmed that other personal items he owned were good evidence of Defendants' earlier wrongdoing, and believes Defendants efforts to take his possessions were in reality efforts to obstruct the criminal investigation they saw coming;

367)  Plaintiff drafted this complaint while being constantly assaulted and while being deprived of restful sleep; Defendants' obstructive and harmful acts damaged the effectiveness and quality of Plaintiff's complaint and, insofar as it increases the risk of misstatements related to security matters, cannot be rationally justified.

368)   Over the course of many years Defendants have been conducting a criminal enterprise in an effort, inter alia, to plunder Plaintiff's creativity and infringe upon and/or destroy the value of Plaintiff's creative and intellectual labor;

369)   Defendants' acts are 'related' and 'continuous' in that Defendants followed a common plan to interfere with Plaintiff's economic opportunities, deprive him of compensation in accord with his vested rights, find pretextual ways to access and use Plaintiff's creativity and intellectual property without Plaintiff's consent, and have been acting in accord with that plan for more than a decade.

370)   Plaintiff has suffered physical, emotional, and financial harm as a result of Defendants' actions.

## FIFTEENTH CLAIM FOR RELIEF

**Fourth Amendment Searches, Seizures/Privacy, First Amendment Retaliation for Speech and Petitioning; Battery, Intentional Infliction of Emotional Distress/Civil Conspiracy; Breach of Fiduciary Duty**

371)   Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

372)   Federal law enforcement Defendants and Defendant inspectors, Defendant President George Bush, and Defendant Vice President Dick Cheney had a hand in reviewing and approving the fraudulent impressment of and harmful use of Plaintiff; within the past 2-3 years Plaintiff has advised U.S. Senators and Representatives that he did not consent to any government scheme that harmed him or placed him at risk of harm and stated that his freedom had been fraudulently curtailed by the US government and intelligence community;

373)   Bush and Cheney knew or should have known of these communications and must have known of Plaintiff's position, as he named them both in a related suit filed in 2003 (03-9097), a complaint in which Plaintiff claimed the rights of a citizen, stated Bush bore responsibility for Plaintiff's welfare, and provided proof that Bush was ordering others to harm him.

374)   Plaintiff should have received the treatment accorded a citizen and not a member of the community and Defendants Bush and Cheney knew the impressment claims were false and frivolous, and therefore their conduct was pretextually official and retaliatory;

375)  Defendants followed a common plan or set of common plans to interfere with Plaintiff's life in a variety of ways, and thereby caused severe emotional, physical, and economic harm to Plaintiff.

## SIXTEENTH CLAIM FOR RELIEF

### 5th & 14th Amendment, 6th Amendment, Intentional Infliction of Emotional Distress

376)  Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

377)  In ambiguous communications, law enforcement Defendants and Defendant inspectors represented to Plaintiff that they had tolled the statute of limitations re a set of criminal allegations and would provide Plaintiff with insurance against being brought to trial for the alleged acts if he helped them with intelligence work.

378)  Defendants knew exculpatory facts that Plaintiff did not and failed to disclose these facts to Plaintiff.

379)  Defendants knew government did not have a sound legal basis for charging Plaintiff with criminal conduct or impressing him but failed to inform Plaintiff either of that judgment or of facts that would have allowed Plaintiff to come to the same conclusion; law enforcement and decision-making Defendants were aware that intelligence community Defendants had a practice of using techniques to influence and control behavior but did not disclose this fact to Plaintiff.

380)  Using Plaintiff without Plaintiff's consent and often without his knowledge, Defendants entered Plaintiff's home and monitored his activities and writings without Plaintiff's consent, and disseminated Plaintiff's intellectual property without Plaintiff's consent, and thereby Plaintiff deprived Plaintiff of liberty and property without due process of law.

381)  Defendants willfully failed to provide the courts with information that would have favorably affected Plaintiff's fate.

382)  Defendants fraudulently and wrongfully denied possessing the exculpatory information, and Defendants failed to authorize payments on Plaintiff's legal claims. .

383)  Defendants actions caused considerable physical, emotional, and economic harm to Plaintiff.

## SEVENTEENTH CLAIM FOR RELIEF

### First Amendment Interference with Petitioning/

-54-

**Work Product/Due Process/Equal Protection/Trespass/Civil Conspiracy**

384)   Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

385)   Defendants have monitored and continued to monitor and publicize Plaintiff's work product prepared for this litigation, in violation of his First Amendment, Due Process and Equal Protection Rights.

386)   Defendants intentionally and without right or justification and beyond consent made unlawful entry into Plaintiff's dwelling and read and/or transmitted privileged legal analysis.

387)   Defendants' actions caused Plaintiff to suffer extreme distress, physical harm, and economic harm.

388)   Defendants followed a common plan to interfere with Plaintiff's litigation rights and thereby caused severe emotional, physical, and economic harm to Plaintiff.

## EIGHTEENTH CLAIM FOR RELIEF

**First Amendment(Conscience); Fourth Amendment (Privacy)**

**Breach Of Fiduciary Duty/Intentional Infliction Of Emotional Distress/**

**Negligence/False Light/Defamation; Civil Conspiracy**

**Fraud; Deceit; Negligent /Intentional Misrepresentation (personal capacity)**

389)   Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

390)   Over the course of 30 years Defendants made highly offensive false and invasive statements or representations about Plaintiff, including but not limited to statements about Plaintiff's character, Plaintiff's disposition, Plaintiff's abilities and Plaintiff's private life, statements which had and continue to have a tendency to injure Plaintiff's occupation and career goals;

391)   few out of Defendants know or would believe the extent to which Defendants were capable of controlling Plaintiff's life & consciousness, though Defendants controlled my speech and/or broadcast my views without my knowledge or consent in offensive ways.

392)   The right to control the dissemination of personal facts about one's self as crucial to privacy.  Views I would not air publicly or to various audiences were broadcast indiscriminately, and views I don't have and words I wouldn't have used were implanted.

393)   Many of my interests over a 40+ year period have been controlled or unacceptably influenced.  My dating life—including every one of my significant dating or romantic

-55-

relationships--was controlled or unacceptably influenced, throughout my adult life—including two engagements.

394)  Defendants routinely criticized Plaintiff's behavior without disclosing their own use of steroids and/or drugs or hormones to upset him.  Defendants routinely criticized Plaintiff's character and decision-making without disclosing that they had been using scientific techniques to influence and control my behavior, and that they were responsible for manipulating his circumstances and restricting my options, and that they had caused Plaintiff to suffer physical and emotional pain without warrant and without my knowledge or consent; Defendants followed a common plan to damage Plaintiff's reputation and thereby caused severe emotional, and economic harm to Plaintiff;

395)  Defendants offered Plaintiff lucrative entertainment industry work in the mid-90s, while concealing that Defendants had already participated in severely damaging the foundation of any future employment relationship by controlling and interfering with Plaintiff's intimate relationships & any potential entertainment industry career, and by publicly disclosing private facts and otherwise invading my privacy over the course of decades.

396)  Defendants further sabotaged Plaintiff's opportunities by creating conflict with potential employers, including entertainment industry employers and university employers and thereby caused Plaintiff to suffere physical, emotional, and economic harm;

397)  Over the course of my adult life, Defendants planned and caused every illegal act that they later attributed to me, Defendants also planned and caused numerous acts that interfered with my ability to be successful or develop relationships;  Defendants willfully or negligently failed to provide decision-makers with information that would have favorably affected my fate, while other Defendants harmed me knowing there was no legal basis for their actions.

398)  Defendants offered false explanations for their conduct and thereby hindered my ability to contest its actions.

399)  Defendants harmed me again by the wrongful and non-consensual imposition of insurance costs for these acts, wrongful and over my objections.

## NINETEENTH CLAIM FOR RELIEF

**Breach of Fiduciary Duty, Negligence/Gross Negligence**

**Equal Protection, First Amendment Retaliation, Civil Conspiracy**

400)   Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

401)   As a result of years of manipulation of my life, and by other actions, Defendants developed an obligation to promote my career in the entertainment industry. Defendants initiated an overt employment relationship with me on fraudulent terms and had already seriously sabotaged my opportunities long beforehand by defaming me or providing fraudulent characterizations to decision-makers, and by embarrassing me and invading my privacy/disclosing public facts.

402)   Defendants have intensified their efforts to make public life unpalatable, and again intended to cause and did cause severe distress; Defendants also committed new and more serious breaches of its fiduciary obligations and new, more serious invasions of privacy, while wrongfully maintaining I consented, in one way or other, to such conduct.

403)   Plaintiff has been coerced and/or induced into interacting with all Defendants and during the time Plaintiff was being exploited, harmed, and used by all Defendants;

404)   Defendant Inspectors were obliged to market Plaintiff in the entertainment industry or take other steps to act in his interest.

405)   Defendants with fiduciary obligations have continuously harmed Plaintiff and breached their duties in various ways since 1977.

406)   For approximately two decades these Defendants failed to advise Plaintiff of their presence in his life; from approximately 1996 to the present these Defendants failed to advise Plaintiff of the role intelligence community and government Defendants government had in his life prior to making their presence known, and should have known that the alternative, Plaintiff learning important and upsetting facts about the role of government in his life over a 30 year span, would create that much more conflict between the parties;

407)   Other Defendants failed to disclose their manipulation and control of Plaintiff's life over the prior 30 years, and generally did very little to look out for Plaintiff's interests;

408)   Defendants disclosed confidential information about Plaintiff to individuals and organizations in the general public and entertainment industry, causing harm to Plaintiff and his reputation.

409)  Defendants allowed individuals and organizations access to confidential information, causing harm to Plaintiff and his reputation.

410)  Defendants with fiduciary obligations to Plaintiff were obliged to advise him of the actions others were taking to control Plaintiff, but instead exploited the circumstance by using Plaintiff as bait, without Plaintiff's knowledge or consent;

411)  Defendants breached their duty of care by making Plaintiff's writings and creative processes available to the general public without Plaintiff's knowledge or consent;

412)  Community Defendants engaged in a pattern of deception and didn't respond to Plaintiff's inquiries regarding their plans, and harmed Plaintiff physically and emotionally while doing whatever they could to sabotage Plaintiff's personal and career goals, while Defendant Inspectors failed to advise or aid Plaintiff, opting instead to exploit him and use him as bait.

413)  Defendant Inspectors failed to compensate Plaintiff for his legal claims or even provide Plaintiff with non-hazardous work to offset earlier more trivial wrongdoing by the intelligence community, despite Plaintiff's repeated requests for such work and the absence of a viable impressment or insurance argument.

414)  Defendants withheld facts that interfered with Plaintiff's ability to challenge both their jurisdictions and their judgment.

415)  Defendants conspired to harm Plaintiff as long as Plaintiff continued to petition.

416)  Defendants wrongfully and capriciously harmed and punished Plaintiff.

417)  Defendants in higher positions in the community were responsible for the creation of policies under which unconstitutional practices occurred and exhibited gross negligence in managing those who caused these violations.

418)  Defendants breached these duties and thereby proximately caused severe physical, emotional and economic harm to Plaintiff.

## TWENTIETH CLAIM FOR RELIEF

**Breach of Fiduciary Duty; Intentional Infliction of Emotional Distress,**

**4th, 5th, 6th, and 14th Amendments; Article One, Section One, California Constitution**

419)  Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

420)     Plaintiff has filed a number of suits against various federal agencies and individuals dating back to 2000; throughout these years Defendants have routinely interfered with Plaintiff's petitioning efforts and have retaliated against Plaintiff for such petitioning.

421)     In every or virtually every case Defendants have physically assaulted Plaintiff subsequent to and near in time to his legal filings; in attacking Plaintiff while Plaintiff was petitioning, Defendants directly and willfully interfered with Plaintiff's meaningful right of access to the courts; Defendants microwaved Plaintiff on June 30 2010 as Plaintiff was drafting this Complaint, after harrassing, gassing and drugging Plaintiff;

422)     As predictable as Defendants' actions have been, law enforcement Defendants have failed to take adequate or reasonable steps to protect Plaintiff.

423)     Defendants have followed a common plan or set of plans to retaliate against Plaintiff for his petitioning, mislead decision-makers and interfere with Plaintiff's petitioning and due process rights under the 1st and 5th Amendments, and have singled him out for unfair treatment in violation of his right of equal protection; by their actions Defendants in fact caused Plaintiff to suffer emotional, physical, and economic harm.

424)   Alternatively, some or all of the above harms to Plaintiff (in all prior causes of action) came about at the direction of or in accord by rulings by judges in state and/or federal court after Defendants concealed evidence and willfully misled the court.

425)   Defendants made representations to the court and/or to state and federal prosecutors and/or to inspectors or those acting in an adjudicative role with knowledge of the falsity of these representations, intending to induce reliance on these representations and thereby caused harm to Plaintiff.

426)   For decades Defendants did not acknowledge their own tortious and illegal conduct or even advise Plaintiff of their surveillance activities or their presence in his life, nor did they advise him as to the judiciary's involvement in his life;

427)   Plaintiff ihas n fact suffered severe emotional distress, physical harm, and economic damage as a result.

428)     Defendants have demonstrated a pattern of harming Plaintiff when the courthouse is closed; from July 3, 2010 to July 5, 2010 Plaintiff was attacked continuously while drafting this complaint;

429)   Some Defendants also misrepresented their authority and/or their affiliation with the court and led Plaintiff to believe they had governmental authority or were conveying

-59-

judicial orders to Plaintiff, thereby interfering with Plaintiff's ability to understand governmental processes and/or genuine judicial rulings and/or petition appropriately and/or make appropriate legal arguments.

430)   Defendants intended to deceive Plaintiff and knew Plaintiff was deceived, and thereby caused Plaintiff to suffer severe emotional distress, physical harm, and economic damage.

431)   Defendants followed a common plan to mislead the judiciary and/or commit perjury and to interfere with Plaintiff's rights under the 4th, 5th, and 6th amendments, and in fact caused Plaintiff to suffer emotional, physical, and economic harm.

432)   Plaintiff has been pushed into taking a more public stance against Defendants than Plaintiff would like on numerous occasions, in an effort to prevent further instances of battery and other illegal acts.

433)   Defendants have followed a common plan to retaliate against Plaintiff for his petitioning, mislead decision-makers and/or commit perjury and to interfere with Plaintiff's petitioning and due process rights under the 1st and 5th Amendments, and singled Plaintiff out for unfair treatment in violation of his right of equal protection; by their actions Defendants in fact caused Plaintiff to suffer emotional, physical, and economic harm.

434)   The response of federal Defendants  has been arbitrary and capricious, an abuse of discretion, or otherwise not in accord with the law and caused Plaintiff physical, emotional, and economic harm.

## TWENTY-FIRST CLAIM FOR RELIEF

### Nuisance/Civil Conspiracy, 4TH Amendment Privacy,

### Article 1 Section 1, California Constitution

435)   Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

436)   Prior to Plaintiff's employment and continuing for many years, Defendants regularly pestered and followed Plaintiff, entered his dwelling without his knowledge or consent made noise outside his dwelling without Plaintiff's consent or exceeding Plaintiff's consent, and without Plaintiff's consent harassed him, drugged him, spiked his food and attacked him, and in other ways acted so as to interfere with the comfortable enjoyment of life and/or property.

437)  Plaintiff found evidence of unauthorized access into Plaintiff's dwelling on many occasions, including items that had been moved, oral hygiene products that had been spiked; for example, on January 27 009 Plaintiff wrote to legislators complaining of government's unauthorized presence in Plaintiff's home.

438)  Defendants deprived Plaintiff of solitude and otherwise acted in a manner offensive to a reasonable person;

439)  Defendants followed a common plan or set of common plans to interfere with Plaintiff's life in a variety of ways, and thereby caused severe emotional, physical, and economic harm to Plaintiff.

## TWENTY-SECOND CLAIM FOR RELIEF

### FOIA, APA (5 USC § 555, 701-708); Privacy Act; First Amendment

440)  Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

441)  Defendants have not produced compliant FOIA responses to Plaintiff, either failing to respond at all or demonstrating that they had conducted cursory and limited searches ignoring what they know;

442)  Plaintiff has sought information relating to the influence of these agencies on his life over a 48 year span; taking into account the constitutional dimension, including the intelligence community's interference with Plaintiff's life while he was very young and lifelong interference with his rights generally;

443)  The response of all Defendants has been arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law; Plaintiff has a statutory right to the records that he seeks, and there is no legal basis for Defendant's refusal to disclose them.

444)  There is not a genuine issue as to Defendants' familiarity with Plaintiff or Defendants' awareness of documents pertaining to Plaintiff; as such, the usual rationale for delaying litigation--i.e. to give Defendants a chance to verify they've produced all responsive records—is absent, and Defendants are interfering with Plaintiff's first amendment petitioning right and right to know.

## TWENTY-THIRD CLAIM FOR RELIEF

### Title 42 Chapter 21 Subchapter 21 Section 1983 (Deprivation of Rights); Due Process; Battery, Conspiracy, Intentional Infliction of Emotional Distress

445)  Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

446)  In his earlier complaint Plaintiff noted that he was unable to convince LAPD to take a report on his behalf when he complained of constant harassment by intelligence community Defendants.

447)  Plaintiff has discovered evidence that the Los Angeles Police Department has long been aware of the practice of federal Defendants of entrapping individuals and using them as bait in law enforcement operations.

448)  Plaintiff has discovered evidence that the agents and employees of Defendant City and County of Los Angeles took affirmative steps in furtherance of a plan to illegally impress and use Plaintiff in law enforcement operations..

449)  More generally, Defendant inspectors and law enforcement fraudulently induced Plaintiff into working for them as bait by, on various occasions, failing to disclose who they were and what their goals were, by failing to disclose they were exposing Plaintiff to various harms; Plaintiff is now, as a result of their actions, a marked man;

450)  Defendants led Plaintiff to believe they were going to help him make his case against other Defendants, at various times intimating they were nearly ready, 'almost there', or 'very close', and hinting that cross-complaining against other Defendants was 'the plan'.

451)  Defendants inspectors and law enforcement personnel at other times expressed to Plaintiff that he was entitled to reward money and that they would help him gain success in the industry; these Defendants knew or should have known that they were making it increasingly difficult for Plaintiff to achieve a successful resolution of his claims, though they implied and suggested that they were helping Plaintiff.

452)  In other instances Defendants sought to obtain Plaintiff's participation in dangerous operations by asking vague questions and interpreting his answers in a way that was at odds with dozens of well-publicized remarks Plaintiff had made to the effect that he was not willing to engage in risky or harmful operations, and in which he had conditioned his interaction with any and all federal personnel upon their understanding and acceptance of this limitation.

453)  Some Defendants, including some Defendant inspectors, were aware of exculpatory facts pertaining to accusations made against Plaintiff to justify impressment and knew or should have known that Plaintiff was being used without right and knew or should have

known that Plaintiff had valid legal claims that amounted to vested rights upon each tortious occurrence.

454)  These Defendants were aware that compensating him in a timely manner for the harm done to him would effectively remove him as a pawn from law enforcement operations.

455)  Plaintiff would have had a successful legal career but for the illegal actions of government and industry Defendants; and, assuming his fiancee was not deceiving him, would be married and have children but for the illegal actions of government and industry Defendants.

456)  It has become evident to Plaintiff that the Defendants who have been responsible for decades of harm to him will continue to pressure him, use him, place him at risk and control him without judicial intervention.

## TWENTY-FOURTH CLAIM FOR RELIEF

### First Amendment Retaliation; Equal Protection; Due Process Title 42 Chapter 21 Subchapter 21 Section 1983 (Civil Action For Deprivation Of Rights); Civil Conspiracy; APA;13th Amendment

457)  Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

458)  Individuals and organizations who might have otherwise been in position to represent Plaintiff have a conflict of interest; Defendants general denials (of some or all of Plaintiff's factual assertions) convinces Plaintiff that his interests have not been fairly or adequately represented in any prior legal proceeding; Defendants have also expressed an unjustifiable intent to continue to interfere with Plaintiff's rights and to delay compensating him.

459)  Defendants now have a history of unjustifiable and fraudulent re-characterization of facts and have a longstanding habit of ignoring facts which are not in accord with the accounts given to decision-makers;as Plaintiff has continued to develop incontrovertible proof of Plaintiff's primary theses, i.e., that Defendants have a history of defaming Plaintiff, and a history of finding pretextual reasons for committing further battery against Plaintiff and illegally interfering with Plaintiff's options in life, that Defendants have framed Plaintiff over the course of Plaintiff's lifetime, that there is a 1:1 correspondence between proof of prior planning and such frames, and that Defendants have controlled Plaintiff's options and subjected Plaintiff to involuntary servitude over the course of decades.

460)  Acting under color of law unnamed federal and Los Angeles Defendants interfered with Plaintiff's First Amendment speech and petitioning rights and right to due process and/or violated his right of equal protection under the fifth and fourteenth amendments.

461)  Defendants' obstructive acts caused Plaintiff to suffer physical harm and damaged the effectiveness and quality of Plaintiff's complaint.

## TWENTY-FIFTH CLAIM FOR RELIEF

### Due Process, Equal Protection, First Amendment Retaliation,
### Civil Conspiracy;  APA (5 USC § 555, 701-708)

462)  Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

463)  For several years, from 1996 to the present, Federal Defendants provided Plaintiff with an alternate way of understanding his tax debts such that Plaintiff had reason to believe his debts were being paid, either from funds the government has that belong to Plaintiff, or in connection with government's unilateral decision to use Plaintiff in law enforcement operations.

464)  Plaintiff believes Defendants caused Plaintiff to experience physical and emotional harm in connection with an incorrect and fraudulent theory he owed a tax debt, and did not disclose their rationale for using Plaintiff in an effort to prevent him from challenging their actions.

465)  For several years, beginning in 1997 and including the years 2003-2005, Plaintiff sought information as to how the federal government was handling his tax issues; the government simply did not bother to respond to his inquiries; in June 2010 the Plaintiff made an FOIA request to the IRS and the IRS has not responded in a timely manner.

466)  The federal Defendants' own gross negligence and deceit has caused Plaintiff's delay in understanding how the government has sought to conceal its own misconduct, and has caused Plaintiff's delay in attending to his tax situation.

467)  Plaintiff is in the process of litigating tax issues by appealing a decision of the US Tax Court; and while the case is confusing, as of this date neither the Tax Court nor the 9th Circuit have accepted Plaintiff's theory that these courts have jurisdiction to apply equitable estoppel in Plaintiff's tax case;  Plaintiff now believes that Defendants' continuing interference with his income for these years estops the federal government from claiming Plaintiff has tax debts, and seeks a declaratory judgment to that effect, and

an injunction preventing Defendants from taking any action to collect a tax debt or impose any costs on Plaintiff on a theory that he has such debts; alternatively, Plaintiff seeks injunctive relief requiring government to pay the debt, either by releasing money that belongs to Plaintiff and is held by the government, or by requiring Defendants to pay it, or by providing a declaratory judgment that the money has been paid.

468)   Defendants followed a common plan to retaliate against Plaintiff for his petitioning, mislead decision-makers and/or commit perjury and to interfere with Plaintiff's petitioning and due process rights under the 1st and 5th Amendments, and singled him out for unfair treatment in violation of his right of equal protection; by their actions Defendants in fact caused Plaintiff to suffer emotional, physical, and economic harm.

469)   The response of federal Defendants has been arbitrary and capricious, an abuse of discretion, or otherwise not in accord with the law and caused Plaintiff physical, emotional, and economic harm..

## TWENTY-SIXTH CLAIM FOR RELIEF
### First Amendment/Interference With Petitioning;
### 5th and 14th Amendment Due Process; Equal Protection

470)   Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

471)   All FOIA Defendants have unlawfully refused to supply Plaintiff with documents and information in their possession with a goal of hampering Plaintiff's Petitioning.

472)   Defendants have interfered with and continue to interfere with Plaintiff's rights of due process under the 5th and 14th amendments, equal protection, and petitioning, and have caused Plaintiff physical, emotional, and economic harm.

## TWENTY-SEVENTH CLAIM FOR RELIEF
### Battery/ Intentional Infliction Of Emotional Distress/Invasion Of Privacy/Negligence;
### Fourth Amendment (Privacy); First Amendment (Conscience)

473)   Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

474)   By causing physical and emotional pain, and by using drugs and scientific techniques including suggestion and hypnosis, Defendants induced or caused Plaintiff to take drugs and become a regular drug user or addict from 1993 to 1996, continued to harm Plaintiff for acts that had been planned and/or intended and/or caused by Government, and offered

false explanations in an effort to hinder Plaintiff's ability to contest Defendants' actions, and thereby caused Plaintiff to suffer physical, emotional, and economic harm.

## TWENTY-EIGHTH CLAIM FOR RELIEF

### Battery/Intentional Infliction Of Emotional Distress/Negligence; First Amendment Retaliation

475)     Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

476)     In the 80s and 90s Defendants caused the deaths or loss of several of Plaintiff's cats and publicly joked about it.  In 2007-2008 Defendants caused the deaths of two of Plaintiff's pet rabbits and publicly joked about it.  Defendants also caused the death of Plaintiff's monkey in 1980 or 1981, and caused and intended to distress Plaintiff; Plaintiff has discovered earlier created documents foreshadowing or predicting the death. Defendants also caused or negligently permitted the constant harassment and physical abuse of Plaintiff's cats from 2001-2010, and thereby caused Plaintiff to suffer physical, emotional, and economic harm.

## TWENTY-NINTH CLAIM FOR RELIEF

### Intentional Infliction Of Emotional Distress/Invasion Of Privacy/Negligence; First Amendment (Retaliation); Due Process

477)     Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

478)     Defendants illegally evicted me on several occasions:  1979-80 in Arizona, again in December 1994, in San Francisco, and again in July 1996, in Los Angeles, and again in October 2009 in Los Angeles.

479)     In the latter case the eviction was apparently brought about by presenting fraudulent or misleading information to decision-makers and was accompanied by a more encompassing plan to retaliate against Plaintiff, and thereby caused Plaintiff to suffer physical, emotional, and economic harm.

## THIRTIETH CLAIM FOR RELIEF

### Battery; Invasion Of Privacy/Intentional Infliction Of Emotional Distress/ Negligence; First Amendment

480)     Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

481)     Defendants interfered with Plaintiff's consciousness and circumstances in an effort to interfere with Plaintiff's ability and desire to pursue an academic career including interference with Plaintiff's mood, level of anxiety, concentration, and ability to perform academically or think, and thereby caused Plaintiff to suffer economic and emotional harm.

## THIRTY-FIRST CLAIM FOR RELIEF

### Intentional Infliction Of Emotional Distress/Invasion Of Privacy/Battery/Negligence/Inteference with Speech and Petitioning; Equal Protection Fraud; Deceit; Negligent /Intentional Misrepresentation (personal capacity)

482)     Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

483)     Over the course of my adult life, Defendants planned and caused every or virtually every wrongful act that it later attributed to me, and harmed me a second time by the wrongful imposition of insurance costs.  By fraud and coercion and over my objections Defendants compelled this harm, and Plaintiff has suffered physical, emotional, and economic harm as a result.

## THIRTY-SECOND CLAIM FOR RELIEF

### Nuisance/Intentional Infliction of Emotional Distress/Battery/Defamation/Negligence/Failure to Warn/ Strict Products Liability; Nuisance First Amendment (Conscience); Fourth Amendment (Privacy)

484)     Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

485)     From 2000-2010 Defendants caused me to be harassed & drugged, spiked my food, sold me spiked, moldy and otherwise tainted food, attacked me, monitored me constantly and made noise outside my dwelling, caused my dwelling to be overrun with bugs, and generally interfered with the comfortable enjoyment of life and/or property.  Defendants also took illegal steps during this time to prevent me from finding an alternate dwelling. These steps included interference with my ability to earn, making false statements about me (interfering with alternate employment), battery, interference with sleep, providing false and misleading reports to state and local law enforcement (causing additional interference with my ability to earn or go elsewhere), causing and/or permitting stray cats

and kittens to be present on the property, banking on and intending to exploit Plaintiff's natural empathy; in accord with a plan to harm Plaintiff, Defendants then interfered with Plaintiff's and ability to place them up for adoption, caused or negligently permitted the constant harassment and physical abuse of Plaintiff's cats from 2001-2010 by, inter alia, sound, gas, and microwaves; causing the animals to cry and to become anxious and to urinate outside of the cat box; which Defendants then cited as one of a set of pretextual and/or fraudulent reasons for evicting Plaintiff; Plaintiff has discovered and provided the government with a set of documents outlining this plan in advance of its instantiation; Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

486)   Some federal Defendants failed to advise Plaintiff of the problems Plaintiff would experience on the subject property; other federal defendants and their co-conspirators directly harmed Plaintiff, and all Defendants are responsible for the physical and emotional harm Plaintiff suffered;

**THIRTY-THIRD CLAIM FOR RELIEF**

**Intentional Infliction Of Emotional Distress/Negligence/Invasion of Privacy/Battery;**

**Interference with Petitioning**

**Fraud; Deceit; Negligent /Intentional Misrepresentation (personal capacity)**

487)   Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

488)   Over the past 10-11 years Defendants interfered with my comprehension of judicial processes and my ability to litigate my claims by, inter alia, pretending to speak on behalf of the court and/or intentionally misrepresenting material facts to me, and by failing to accurately relay information related to judicial rulings and thereby caused me to suffer physical, emotional, and economic harm;

489)   Defendants also sought to confuse and trick Plaintiff as to the proper procedures for litigating a case of this type, or even understanding the most relevant judicial pronouncements;

490)   Defendants also intentionally interfered with my petitioning—including petitions to federal legislators, federal judicial officials, and Tax Court judges, by using subconscious behavioral control techniques and/or nuisance tactics and/or battery.   Defendants also

intentionally interfered with my receipt of documents from the IRS, 8th Circuit Court of Appeals, the US Tax Court, and the Central District of California.

491) Defendants intentionally created ambiguities and complexities that interfered with my understanding and my ability to identify and take legal action against those harming me.

## THIRTY-FOURTH CLAIM FOR RELIEF

### Invasion Of Privacy/Intentional Infliction Of Emotional Distress/
### Breach Of Fiduciary Duty/Nuisance

492) Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

493) Defendants also intentionally interfered with my petitioning—including petitions to federal legislators, federal judicial officials, and Tax Court judges, by using subconscious behavioral control techniques and/or nuisance tactics and/or battery. Plaintiff has recently discovered several new pieces of evidence documenting Defendants' plan to subvert discovery in District Court case 01-4340. Defendants also intentionally interfered with my receipt of documents from the 8th Circuit Court of Appeals, the US Tax Court, and the Central District of California.

494) Defendants intentionally created ambiguities and complexities that interfered with my understanding and my ability to identify and take legal action against those harming me.

## THIRTY-FIFTH CLAIM FOR RELIEF

### Intentional Infliction Of Emotional Distress/Negligence; First Amendment (Retaliation);
### Battery; Fraud; Deceit; Negligent /Intentional Misrepresentation (personal capacity)

495) Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

496) Using the techniques described in the preceding paragraphs, Defendants have manipulated my thought processes for their own purposes for several decades without my knowledge or consent

497) For several months, beginning in and around January 2010 and continuing to the date of this complaint, Defendants made false representations to governmental decision-makers in an effort to obtain official approval for their retaliatory plans; alternatively, Defendants opted to commit battery directly, firing energy weaponry at Plaintiff's eyes and face, causing swelling, bags, vision problems and increased lines in and around Plaintiff's eyes, and at times have also caused Plaintiff to experience blurrier vision;

-69-

498)    By these actions Defendants have caused Plaintiff physical, emotional, and economic harm.

## THIRTY-SIXTH CLAIM FOR RELIEF

### Conversion/Intentional Infliction Of Emotional Distress

499)    Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

500)    Defendants wrongfully took or caused me to lose intellectual property I created over the course of my life (including my philosophy writings, poems, essays, and works of fiction) and thereby caused Plaintiff emotional, and economic harm.

## THIRTY-SEVENTH CLAIM FOR RELIEF

### Conversion/Trespass to Chattels/Nuisance

501)    Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

502)    Defendants took or caused me to lose possession or useful/beneficial ownership of much of my intellectual property, including poems and essays and stories in my copyrighted Tribute Anthology, and also caused the loss of my 1991 Ford Aerostar van, and routinely interfered with the operation of my vans, from 2000-2009, by damaging, on many occasions, car tires, several starters, muffler, and my brakes.  In 1996 Defendants took or caused me to lose possession of my 1967 Ford Mustang.  In the late 70s or 1980 Defendants caused me to lose the beneficial ownership/value of my 1973 Mercury Cougar.

## THIRTY-EIGHTH CLAIM FOR RELIEF

### Conversion/Intentional Infliction of Emotional Distress/

### Negligence/Breach of Fiduciary Duty

### Fraud; Deceit; Negligent /Intentional Misrepresentation (personal capacity)

### Fourth Amendment (Property)

503)    Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

504)    Some in Defendants fraudulently denied my valid prior claims, while other Defendants willfully or negligently failed to document facts that demonstrated the validity of the claims or the falsity of justifications for the harms related to these claims.  Those negligent and fraudulent denials have caused additional readily foreseeable harm in the

form of many additional torts, including many new acts of battery, invasion of privacy, intentional infliction of emotional distress that would not have occurred had the claims been properly admitted.   At least some in Defendants denied the validity of the earlier claims primarily so they could continue to wrongfully use me.

## THIRTY-NINTH CLAIM FOR RELIEF

### Malicious Prosecution/Abuse of Process/Battery

### Fraud; Deceit; Negligent /Intentional Misrepresentation (personal capacity)

505)   Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

506)   Defendants intentionally refrained from producing relevant (often exculpatory) evidence to decision-makers and relevant information to individuals inclined to assault me, and thereby caused me to be harmed.  Defendants wrongfully resorted to adjudicative processes and caused me to be harmed and thereby caused Plaintiff to suffer physical, emotional, and economic harm.

507)   As Plaintiff has documented that Defendants engaged in entrapping and outrageous and illegal conduct, and as Plaintiff has found documents prepared in advance of every allegation of wrongdoing by Plaintiff, that predict the manner in which Plaintiff would be entrapped or framed, and as Plaintiff is sure that the federal Defendants has also sought to frame him and harm him without just cause, and as Plaintiff has been made aware of absurd profiling claims made by individuals in the federal Defendants intended to support their claims that Plaintiff has been primarily responsible for the problems Defendants created, Plaintiff has repeatedly advised Defendants that does not accept being used or harmed as 'insurance' that Plaintiff will not be prosecuted.

## FORTIETH CLAIM FOR RELIEF

### (Privacy Act—Improper Dissemination; First Amendment Retaliation; APA)

508)   Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

509)   Regarding the CJIS report produced by the FBI, the FBI failed to make reasonable efforts to ensure that the information and records were accurate, complete, timely and relevant for agency purposes in violation of 5 U.S.C. § 552a(e)(6). The FBI compiled information concerning Plaintiff's alleged arrest record,   The information and records that were disseminated and published were irrelevant, false, malicious and defamatory,

incomplete, inaccurate, and untimely, thereby causing Plaintiff physical, emotional, and economic harm.

510)   In violation of its own procedures and in retaliation for Plaintiff's petitioning, the FBI published confidential information, including names of witnesses, provided by Plaintiff relating to crimes committed against Plaintiff, thereby causing Plaintiff to suffer physical, emotional, and economic harm.

## FORTY-FIRST CLAIM FOR RELIEF

### First Amendment Retaliation, Equal Protection/Class of One, Battery, Defamation, Intentional Infliction of Emotional Distress, Civil Conspiracy

511)   Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

512)   In order to protect party members and elected Republican officials who had wrongfully harmed Plaintiff and were facing investigation and scrutiny, Defendant Republican National Committee Defendants targeted Plaintiff for harm and retaliation. Defendant RNC conspired with others in an attempt to harm Plaintiff physically, emotionally, economically, and to damage Plaintiff's reputation.

513)   Defendant RNC offered one pretext or another for harm to Plaintiff; in some cases these Defendant and conspirators acted under color of law, feigning ignorance of exculpatory facts or falsely asserting Plaintiff was willfully involved in government operations or that Plaintiff had consented to a harm for benefits scheme, while interfering with Plaintiff's economic opportunities to prevent Plaintiff from finding alternate employment and/or relying on the damage to Plaintiff's opportunities which Defendant RNC had already done.

514)   Plaintiff believes a speaker was representing either Minnesota Governor Tim Pawlenty or the Republican Party when Plaintiff was told, close paraphrase, "you leave us alone, we'll leave you alone."

515)   Plaintiff has noted a strong correlation, over the course of many years, between Plaintiff's petitioning and public condemnations of Republican activities, and physical harm to Plaintiff, in the form of inter alia, food spikes, energy attacks, and gas attacks. On information and belief the RNC acted as a hub for planning retaliatory attacks;

516)     On information and belief all or almost all of the attacks listed in Plaintiff's Seventh Claim for Relief were perpetrated by the right wing of the intelligence community, as part of a conspiracy with Republican officials;

517)     On February 21 2010 Plaintiff complained to legislators, accurately, that Plaintiff's cats were being attacked and crying intermittently, that Plaintiff had been microwaved intermittently; Plaintiff was informed and believes the attack was retaliatory, related to Plaintiff's petitioning, and perpetrated by the right wing, on some unstated pretext.

518)     In late June 2010 Plaintiff was fraudulently induced to perform approximately 5 hours of labor and drive approximately 50 miles for twenty dollars; on information and belief the individual committing the fraud was acting at the behest of the RNC/right;

519)     On July 3, 2010, a few days after Plaintiff added this claim against the RNC, a news article appeared in the Minneapolis StarTribune stating that party personnel called for Chairman Michael Steele to step down; Plaintiff was viciously attacked by microwave weaponry for more than 30 hours from July 3-July 5 2010.

520)     Defendants offered false explanations for its conduct and thereby hindered my ability to contest its actions and thereby caused Plaintiff to suffer physical, emotional, and economic harm.

### FORTY-SECOND CLAIM FOR RELIEF
**First Amendment/Speech, Petitioning, Association;**
**Eighth Amendment; Equal Protection, Due Process**

521)     Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

522)     Operating without a plea agreement, conviction, or Plaintiff's consent, and in part in retaliation for Plaintiff's speech, and otherwise capriciously and without right, Defendants have caused Plaintiff to suffer the following types of harm:  kidney pain and injury;  hair loss by energy weaponry directed at a particular spot on Plaintiff's head;  permanent damage to Plaintiff's eyes and face, by energy weaponry, and brain trauma caused by energy weaponry and other unknown devices, interfering with Plaintiff's memory and cognition; the killing of and assault upon Plaintiff's pets;

523)     Government either caused or enabled several problems with kidney stones, over the course of my life, problems with my vision (perhaps from radiation) over the past 3-4 years (including energy attacks at my eyes, specific inducements causing me to be poked

in the eye), attacks causing me to fall from my bike, and causing me to seriously cut my hands/bleed profusely.   Other battery includes energy attacks directed at my crotch, kidneys, constant neck and head attacks, stomach, kidneys, and arms, and a number of very severe attacks aimed at my heart, many of directed at me while I was in my home, without others physically present.   Government also caused me to have impaired breathing over the course of several years by attacking me and by causing me to be exposed to gases and chemicals.

524)   In those cases where Defendants acted under color of right, Defendants violated Plaintiff's speech, due process and equal protection rights, Plaintiff's right to be free of cruel and unusual and otherwise illegal punishment, Plaintiff's right to confront witnesses.

## FORTY-THIRD CLAIM FOR RELIEF

### First Amendment/Speech, Petitioning, Association;

### Equal Protection, Due Process; Battery

525)   Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

526)   Defendants intended actions substantially certain to cause physical harm to Plaintiff, directly, by attacking Plaintiff with energy weaponry and spiking Plaintiff's food, and indirectly, by fraudulently causing authorities to believe they had just cause to harm Plaintiff when they did not; and by interfering with Plaintiff's attempts to live independently;

527)   Through such violence, and by threats and intimidation, and by making ambiguous and vague offers, and in circumstances where Plaintiff's options have been illegally circumscribed, Defendants have sought to coerce Plaintiff into accepting small and unfair amounts of compensation in relation to Plaintiff's claims, thereby interfering with Plaintiff's petitioning and due process rights

## FORTY-FOURTH CLAIM FOR RELIEF

### Battery/Intentional Infliction Of Emotional Distress/Trespass/Nuisance/Negligence

528)   Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

529)   Government has physically harmed me or permitted others to physically harm me on a regular basis since 2000, without justification or right, in some cases entering my

dwelling or coming onto my property without my consent, in many cases wrongfully inducing others to harm me.

## FORTY-FIFTH CLAIM FOR RELIEF

### Battery/Intentional Infliction Of Emotional Distress/Negligence

530)    Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

531)    Defendants either caused my scoliosis at an early age or was aware of a congenital problem and had an obligation to provide medical assistance but did nothing, though they generally controlled my life and consciousness during that time. In 1991 or 1992 Defendants intentionally gave me faulty medical advice, increasing my back pain and worsening my scoliosis. In 1996 Defendants promised to fix my back problems, but did nothing. In 2000 Government caused me to suffer a back injury by giving me heavy repetitive lifting tasks without back support, in excessive heat, to retaliate for my petitioning.

## FORTY-SIXTH CLAIM FOR RELIEF

### Battery; Breach of Fiduciary Duty; Breach of Implied Warranty of Authority

### First Amendment/Speech, Petitioning, Association; Due Process

532)    Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

533)    Without Plaintiff's consent or approval, and often without Plaintiff's knowledge, Defendants conveyed that they were authorized to act as agents of Plaintiff (agent-principal), and while doing so interacted with others in deceptive ways, and harmed these individuals while purporting to carry out Plaintiff's wishes;

534)    Defendants also acted as agents of others in harming Plaintiff, apparently without advising these principals that, e.g., Plaintiff would not or was very unlikely to participate in a harm for benefits scheme, and in other regards knowingly acted against the interests of these individuals, thereby causing rifts to develop between Plaintiff and individuals Plaintiff had never met, and causing Plaintiff to suffer physical, emotional, and economic harm;

## FORTY-SEVENTH CLAIM FOR RELIEF

### Intentional Infliction Of Emotional Distress/Negligence

### First Amendment/Speech, Petitioning, Association;

### Equal Protection, Due Process; Battery; 13th Amendment

535)   Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

536)   Defendants employed Plaintiff without disclosing their primary intentions; i.e. in many cases employing Plaintiff simply for the purpose of creating a legal pretext to attack Plaintiff, interfere with Plaintiff's privacy, and disrupt Plaintiff's litigation, in conditions where Defendants interfered with Plaintiff's attempts to find alternative employment, and/or relied on the damage they had already done to Plaintiff's ability to find other employment.

### FORTY-EIGHTH CLAIM FOR RELIEF

### Malicious Prosecution/Abuse of Process/Battery/First Amendment Retaliation

537)   Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

538)   Government intentionally refrained from producing relevant (often exculpatory) evidence to decision-makers and relevant information to individuals inclined to assault me, and thereby caused me to be harmed.   Government wrongfully resorted to adjudicative or quasi-adjudicative processes and caused me to be harmed.

### FORTY-NINTH CLAIM FOR RELIEF

### Intentional Infliction Of Emotional Distress/Negligence

### Conversion/Intentional Infliction of EmotionalDistress/

### Negligence/Breach of Fiduciary Duty; Nunc Pro Tunc and Estoppel;

### United States v. State Bank, 96 U.S. 30, 24 L.Ed. 647

### Fraud; Deceit; Negligent /Intentional Misrepresentation (personal capacity)

539)   Plaintiff hereby incorporates by reference the allegations made in the preceding paragraphs.

540)   Some in Government fraudulently denied my valid prior claims, while others in Government negligently failed to document facts that demonstrated the validity of the claims or the falsity of justifications for the harms related to these claims.  Those negligent and fraudulent denials have caused additional readily foreseeable harm in the form of many additional torts, including many new acts of battery, invasion of privacy, intentional infliction of emotional distress that would not have occurred had the claims been properly

admitted.   At least some in Government denied the validity of the earlier claims primarily so they could continue to wrongfully use me.

541)      In accord with the principles set forth in United States v. State Bank, 96 U.S. 30, 24 L.Ed. 647, Defendants cannot hold Plaintiff's money which has gone into the government treasury by means of government fraud, and Plaintiff is accordingly entitled to that money without delay, while Defendants should be estopped, and otherwise restrained by the principle of nunc pro tunc, from making any claim of any sort related to Plaintiff's employment, insofar as such claims would capitalize on Defendants' persistent wrongdoing, and Defendants should be estopped from taking any steps of any sort whatsoever to harm  or use Plaintiff in government operations.

### WHEREFORE PLAINTIFF PRAYS FOR THE FOLLOWING RELIEF:

1.      Damages under Title 18  § 1964 (a), (b) and (c)

2.      Damages under the Lanham Act and California Business and Professions Code;

3.      Compensatory Damages for Defendants' tortious and unconstitutional acts

4.      A disgorgement of all profits Defendants' earned as a result of every breach of fiduciary duty.

5.      Punitive Damages

6.      Injunctive relief requiring Defendants to provide Plaintiff with all documents he seeks under the Freedom of Information Act, and documents from the CJIS;

7.      Declaratory Relief that Defendant's refusal to disclose the records requested by Plaintiff is unlawful

8.      Reasonable attorney's fees and costs of suit; and

9.      Such other relief as the Court deems just and proper.

### DEMAND FOR TRIAL BY JURY

Plaintiff requests a jury trial regarding all his claims involving a request for damages.

July 13, 2010                                             **Glen Broemer**

-77-

BARBARA BOXER

COMMITTEE:
COMMERCE, SCIENCE
AND TRANSPORTATION

ENVIRONMENT
AND PUBLIC WORKS

FOREIGN RELATIONS

# United States Senate

HART SENATE OFFICE BUILDING
SUITE 112
WASHINGTON, DC 20510-0505
(202) 224-3553
senator@boxer.senate.gov
http://boxer.senate.gov

February 1, 2002

Mr. Stanley M. Moskowitz
Director Congressional Affairs
Central Intelligence Agency
Room 7-C38 CIA
Washington, DC  20505

Dear Mr. Moskowitz:

Enclosed please find a copy of the letter sent to Senator
Boxer from her constituent, Glen Broemer, regarding his former
employment with the Central Intelligence Agency.  Mr. Broemer
wishes the Agency to conduct an investigation into his employment
history as he believes he is being harassed by the CIA.  He also
wishes to verify the telephone number to the Inspector General's
office as the number he was given is disconnected (703/874/2553).

Senator Boxer is forwarding this material for your review
and consideration as you deem appropriate. Please address any
questions or comments to Julia Suh at Senator Boxer's San
Francisco office.

Thank you for your attention to this request.

Sincerely,

Eric J. Vizcaino
Director of Constituent Services

EJV:jss
Enclosures
cc: Glen Broemer

Exh 1

July 2, 2001

Senator Barbara Boxer

312 N. Spring

Los Angeles, CA

Dear Senator Boxer

Subsequent to drafting the enclosed letter I've experienced the following difficulties related to serving the CIA with my most recent summons and complaint:

The company employed to serve process in Virginia, Omega Courier Inc., denies that they are affiliated with the Agency (a question asked to determine potential conflict of interest), but as events unfold it appears as though they are at least operating under the influence of someone at the agency.

The courier service tells me that they are unable to effect service, that the summons and complaint was refused at the gate. I contact the CIA General Counsel by phone. The individual responsible for answering the phone at the General Counsel/CIA (door slams as I type, twice), phone (703) 874-3207, informs me that service of process will be accepted at a particular gate informs me that the guard at the Agency gate will contact an Agency Attorney, who will come out to accept the summons and complaint     (The prior messenger service readily accepted the job, assured me they serve the agency all the time, only to tell me one week later, they "couldn't get anyone to touch this job. No one will come near it.")

The courier attempts service again, only to be told again that the summons and complaint will not be accepted. I call again, the woman answering the phone, the woman who always answers the phone at the General Counsel's office, who had just told me the service can be effected at another gate, now tells me "I don't know what to tell you" I ask her to identify herself. She refuses. I ask her for her title. She refuses. I inquire as to whether we can at least refer to her as the woman who answers the phone for the General Counsel. (helicopter in the background as I type, 3rd time) I state that she's a government employee and "isn't thinking very well " if she believes that she shouldn't identify herself. "You're probably right."

Exh 2 p 1

Five minutes later I receive a call from Virginia by an individual who identifies himself only in threatening terms. "The supervisor for the attorneys" and tells me that he understood that I've been suing disrespectfully. (As I write this the type is changed to ten point underlined and bold by whoever shadows my computer.) Please advise me as to when my sense of respect ought to kick in. Is it when the public and open branch of the CIA refuses to respect the law? Or when they threaten me for suggesting that they ought to do so? Why should any agent respect such action? Isn't it a problem when there aren't any moral or legal grounds to accompany loyalty to the agency, when the agency wilfully and openly violates the law?

I opt for service by mail, Action Messenger in Los Angeles. I ask the service to send the three pieces of certified mail, and return proofs of service and return receipts. The messenger service sends the mail at triple the appropriate cost (registered instead of certified), and is unable to locate the proofs of service and receipts on two visits to the office. I call the office and am placed on hold for 15 minutes. A "know size limit" ad plays in the background as I wait on hold.

Apparently individuals in the agency of sufficient size and stature can effectively bend the law to their will. As I draft this letter a helicopter flies low over my apartment, another five minutes later.

Constitutional case law and the Intelligence Acts support my right to file suit against the Agency. Case law and committee notes attached to statutes and regulations suggest that retaliatory activity in the intelligence community is a serious problem. The impulse to close off from other areas of government appears to be overwhelming. If Congress cannot modify the behavior of the Agency to coerce law-abiding behavior – and I suppose it cannot, perhaps it ought to consider modifying the procedures by which suits against the agency are maintained.

I declare under penalty of perjury that the foregoing facts are true and correct.


Glen Broemer

End p 2



I am preserving my right to choose my forum for redressing the government; as such, again, I withdraw or revoke any requests that may have been made to you on my behalf. I may request an investigation from you at some point in the future.

Thank You,

Gwen Bloomer

Exh 3

November 19, 2001

Inspector General Brit Snider
CIA
Washington D.C.

Dear Sir:

1.  From my research it appears that the proper procedure for reporting retaliatory acts (related to the Whistleblower Protection Act) is to contact your office first, as opposed to reporting the acts directly to a US Senator or the Intelligence Committee. It also appears as though other forms of reporting, incluuding but not limited to opinions on training procedures, may be reported directly to Federal legislators. I suppose the general, constitutional rule is that I have a petition right to contact Federal legislators to voice my opinion on all intelligence-related matters that aren't classified as secret, and that I will always be told if a matter is classified as secret. Please let me know if this understanding of the law isn't accurate.

2.  While there is a protocol for notifying legislators of Whistleblower problems, it appears as though no such protocol exists for consulting with attorneys, that I may, at any time, consult with any attorney for filing suit either in connection with retaliatory acts or otherwise, asymmetrical to the rules for contacting Senators and Congressmen, (which seems ridiculous). Please let me know if the Agency has a set of attorneys that are cleared for intelligence litigation, or if the procedure is simply to cold call attorneys from the yellow pages.

3.  I sent the attached letter to George Tenet on December 18, 2000 and again on October 22, 2001. It seems to me that I have a right to the information requested. I can't believe that the agency is refusing to provide basic information as to my financial status. The effect is my continued coerced employment in the agency, (as a disclosure of my financial position may well lead me to quit, immediately, available for independent contract work in the future upon a clear statement of the terms).

4.  I requested an interview regarding sexual harassment (with an EEOC counselor) and another FTCA form more than 6 weeks ago. I am still waiting to hear from the agency. If I don't receive the requested information soon, I'll simply amend my recently filed suit to include the claims, and the agency, having failed to comply with the procedural requirements, won't have the right to object.

5.  Please do not take any action that jeopardizes my litigation rights.

Thanks for your attention to these matters

Glen Broemer

EXh 4

To.
Subject: confidential

29 Mar 2004
Subject: confidential

Representative

My food continues to be spiked on a regular basis. I'm unable to determine which foods are spiked and I'm unable to take measures to stop the spiking. I've tried shopping at various markets, purchasing items I haven't purchased before, etc. I'm also unable to get pain relief or medication once I've taken in toxic substances. Despite the representations that the spikings are caused by the entertainment community, the intelligence community continues to provide justifications for the spikings, claiming credit. I suppose there is some chance that some of the spikings are disciplinary, as I see occasional references to "defy", etc.—suggestions that I have intentionally committed some act that would justify disciplinary action. (Adding to the interpretive difficulty, the community sometimes plays a game in which they try to confuse me; the wrong game to play when knowing what is happening is a requirement of due process.)

The last time I wrote to you I received a call from a person I take to represent a supervisor or someone in enforcement in the intelligence community, apparently to gauge whether I was serious in indicating I didn't consider myself an employee or a contractor or a member of the intelligence community. As I indicated, I had a set of conditions attached to continued affiliation with the community. One of those was protection from further harm, another that I retain my constitutional/petitioning rights. I've spent the last 3 days too ill to function. Those conditions haven't been met. As a result, this is my last week working for employers I take to be in the intelligence community, barring some resolution. (I will notify you again if such a resolution has been achieved. If you haven't heard from me, my resignation is in effect.) My rights have been ignored by the intelligence community for 20+ years, and I've had enough.

Glen Broemer
5449 Lemon Grove
Los Angeles CA 90038
--------- Forwarded message ---------
From: glen r broemer <glenbroemer@juno.com>
To:         @mail.house.gov
Subject: confidential

Representative Pelosi,
I sent this letter by email with helicopters overhead...I suppose it s relevant that j am not exactly sure why my foc d was poisoned, though I am 100% sure that it was, with the advance knowledge of Pavilion s personnel. (Surely the administration of toxins to a community member





**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**
312 North Spring Street, Room G-8  Los
Angeles, CA  90012
Tel: (213) 894-7984

**SOUTHERN DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701-4516
(714) 338-4570

**EASTERN DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328-4450

**TERRY NAFISI**

District Court Executive
and Clerk of Court

Thursday, July 15, 2010

**GLEN BROEMER**
**9236 BLOOMINGTON AVENUE**
**BLOOMINGTON, MN  55425**

Dear Sir/Madam:

A Complaint for Civil Rights was filed today on your behalf and assigned civil case number
CV10- 5193 MMM (RZ)

A ☐ Motion for Extension of Time to File Habeas Corpus Petition was filed today on your behalf and
assigned civil case number _____

Please refer to this case number in all future communications.

Please Address all correspondence to the attention of the Courtroom Deputy for:

☐ District Court Judge _____
☒ Magistrate Judge     **Ralph Zarefsky** _____
at the following address:

☒ U.S. District Court
312 N. Spring Street
Civil Section, Room G-8
Los Angeles, CA  90012

☐ Ronald Reagan Federal
Building and U.S. Courthouse
411 West Fourth St., Suite 1053
Santa Ana, CA  92701-4516

☐ U.S. District Court
3470 Twelfth Street
Room 134
Riverside, CA 92501

The Court must be notified within fifteen (15) days of any address change.  If mail directed to your
address of record is returned undelivered by the Post Office, and if the Court and opposing counsel
are not notified in writing within fifteen (15) days thereafter of your current address, the Court may
dismiss the case with or without prejudice for want of prosecution.

Sincerely,

Clerk, U.S. District Court

By:  MMURRAY _____
            Deputy Clerk